## Loar Adoption

*Carl Moses*, for Mercer County Child Welfare Services, petitioner.

*John Reed*, guardian ad litem, p. p.

ACKER, J., June 15, 1972.—The Mercer County Child Welfare Services has petitioned this court for an involuntary termination of the parental rights to a child, Michael Loar. Because the last known address of the natural mother was Massillon State Hospital, Massillon, Ohio, this court appointed John Reed, an attorney of this bar, as guardian ad litem. In that capacity, Mr. Reed traveled to the Massillon State Hospital, interviewed the natural mother, Mrs. Adella Lennox Loar, and talked with various officials and medical personnel of the hospital. It was stipulated and agreed that it was not to the best interest of Mrs. Loar to attend this hearing and she was, therefore, absent.

Notice was attempted to be given to the natural father, through the Probation Office of this court for the Mercer County Child Welfare Service, of this hearing to the last known place of employment, in that it was known that he no longer resided at the last known residential address. The unsealed envelope was returned, "Unknown, No One to Accept Letter."

## FINDINGS OF FACT

1. By stipulation it was agreed that the natural mother, Adella Lennox Loar, has been hospitalized at the following places for the periods as stated: Woodside Receiving Hospital, Youngstown, Ohio, March 3 through September 10, 1953; Woodside Receiving Hospital, Youngstown, Ohio, June 23 through July 28, 1954; Woodside Receiving Hospital, Youngstown, Ohio, April 19 through July 1, 1955; Massillon State Hospital, Massillon, Ohio, July 1, 1955, through January 31, 1956; Warren State Hospital, Warren, Pa., January 5, 1960, through September 1964; New Jersey State Mental Hospital sometime between the spring of 1965 and the winter of 1966; Woodside Receiving Hospital, Youngstown, Ohio, February 21, 1966, to May 12, 1966; Woodside Receiving Hospital, Youngstown, Ohio, June 19, 1966, to July 7, 1966; Massillon State Hospital, Massillon, Ohio, July 7, 1966, to the present.

2. The minor, Michael Loar, was placed in the custody of the Mercer County Child Welfare Services on January 5, 1960. He was placed by those services with the family of Mr. and Mrs. Wayne Adams, R. D. 1, Hadley, Pa., on August 11, 1960.

3. The child was born on December 16, 1959, from the parents Hezekiah E. Loar and Adella Lennox Loar.

4. The natural father's last known address was 204 Arlington Street, Youngstown, Ohio.

5. At the time of the initial placement of the child with the Mercer County Child Welfare Services, the mother, Adella, who had been living on North Water Street in Sharon, was a patient in Warren State Hospital. The father, Hezekiah, was serving a term in the Allegheny County Jail for forgery.

6. The Sharon Police Department had intervened and found that there was no food in the apartment.

7. There was no voluntary consent by either parent on the initial placement.

8. In the beginning, letters were received from North Warren by various administrative personnel inquiring for the natural mother, Adella, as to the welfare of the child.

9. The father, Hezekiah, was released from the Allegheny Jail in March of 1960 and did visit Michael in August of 1960 when Michael was eight or nine months old.

10. On August 24, 1960, a letter was received from the Family Service and Childrens Aid Society of Warren County for the natural father requesting that the child be transferred to a foster home in the Warren area. At that time, Mr. Loar himself was a patient in Warren State Hospital as well as his wife. This request was not complied with.

11. The parents were in Warren State Hospital at the same time from February 8, 1961 to July of 1962. During this time period, there were various contacts concerning the child through the hospital personnel and several letters were received from the natural father. Nothing had been heard from the natural mother directly since 1962.

12. In 1966 or 1967 information was received from the Protestant Family Service of Youngstown and Mahoning County Board of Child Welfare to the Mercer County Child Welfare Services concerning Mrs. Loar, indicating her release from the hospital and her being in Youngstown at that time. Since then, there has been no contact from Mrs. Loar or anyone on her own behalf.

13. The last inquiry from the natural father was in July of 1966. Neither of the natural parents have contributed in any way towards the maintenance, supervision, care and guidance of Michael since the

child was initially taken and placed with the Mercer County Child Welfare Services.

14. John Reed, Esq., was appointed by this court guardian ad litem to represent the interest of the natural mother, Adella, and accepted service of the petition for involuntary termination on behalf of Mrs. Loar. He also spoke to Mrs. Loar at the Massillon State Hospital, Massillon, Ohio, following his appointment, as well as with a Mrs. Bogart, Director of Social Services, and Mr. Bolitho, caseworker for Mrs. Loar, and a Dr. Caruso, superintendent of the hospital.

15. After conversing with the various people involved and meeting with Mrs. Loar, it was concluded that it was not to the best interest to Mrs. Loar to be permitted to come to the hearing.

16. Mrs. Martha Jane Adams, the foster mother, testified that Michael Loar has been residing in their home since August 11, 1960, as their son along with their four children.

17. Approximately a week or two after she received the child in 1960, the natural father came to visit Michael but that is the last she has seen of him. The child has never been visited by the natural mother.

18. Mr. Lennox, the maternal grandfather, sent Christmas cards to Michael for the first three years, but it was Mrs. Adams' best information that he had subsequently died.

19. There had been no support, maintenance or care provided by either of the natural parents for Michael since the last conduct of the father within the child's first year of life and none by the mother.

## DISCUSSION

The legislature, by the Act of July 21, 1970, P. L. 620 (No. 208), art. III, sec. 311, 1 PS §311, has added as grounds of involuntary termination "the repeated and

continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without the essential parental care, control or subsistence necessary for his physical and mental well being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." Although both of the natural parents were institutionalized for at least a portion of the time between placement of the child and this hearing, they were not incarcerated or hospitalized all the time. Even if hospitalized or incarcerated, the parents could continue to write and show some interest in the child if they desired. We believe the natural father, Hezekiah, has abandoned the child in the traditional sense of showing lack of concern for his welfare. The natural mother is in a somewhat different position because of her repeated hospitalization. The query is fairly presented: can a natural parent be denied parental right regardless of fault? A reading of the above-quoted section of the 1970 Adoption Code clearly indicates an intention by the legislature to terminate parental rights despite a desire by the parent to perform parental obligations. We hasten to add there is no evidence by either party in this case to assume any parental rights. The statute specifically included those who "cannot" because of repeated and continued incapacity provide the child with essential parental care and control or subsistence necessary for his physical and mental well being. Therefore, the legislature is intending to cover exactly the type of situation present here. This court finds that the natural mother cannot provide for the child and has failed to do so for a period much in excess of the six months termination period. It is a matter of years with no expectation of improvement.

Therefore, it is the conclusion of this court that the petition of involuntary termination should and is hereby granted.

## ORDER

And now, June 15, 1972, it is hereby ordered and decreed that Hezekiah Loar's and Adella Loar's natural parental rights are hereby terminated pursuant upon the Act of July 21, 1970, P. L. 620, (No. 208), art. III, sec. 311, 1 PS §311.