# Smith Adoption Case.

Argued October 4, 1963. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Joseph K. Bonidy,* for appellant.

*William F. Caruthers,* for appellees.

502

OPINION BY MR. JUSTICE ROBERTS, November 12, 1963:

The sole question for determination on this appeal from a decree of adoption entered by the Orphans' Court of Westmoreland County, is whether the evidence supports the finding by the court below that the natural mother abandoned her child for a period of at least six months. If the evidence establishes abandonment, her consent to the adoption is unnecessary. If, however, the evidence is insufficient to support such a finding, the adoption may not be decreed without her consent. Adoption Act of April 4, 1925, P. L. 127, as amended, 1 P.S. §§1-7 (1963).

The natural mother, age 25, unmarried, and a resident of Clarion County, gave birth to a female child on September 21, 1961, in a Westmoreland County hospital. Three days later, the mother carried the child from the hospital and surrendered the infant to her obstetrician for adoptive placement.

At the adoption hearings on October 23 and November 7, 1962, the natural mother appeared with counsel and testified in opposition to the adoption of her daughter. On both occasions, then more than a year after she surrendered the child, she testified that prior to October, 1962, she made no attempt or effort to secure custody of her child, did not express to anyone a desire to see or visit the child, nor did she request of her physician-intermediary or of anyone else the return of her child.

The essential facts are not in controversy. Appellant resided with her mother in a community of less than 1000 population. Six months before the birth of the child, she left her residence and proceeded to another small Pennsylvania community, where the putative father was located, with the expectation of "getting married." The marriage did not take place; instead the young man had her talk to a clergyman who

(according to her testimony) advised "the only thing I should do was place this child for adoption and start anew, forget about the child and start over."[1] She then consulted a family agency in Pittsburgh and was referred to a social agency maternity home in Allegheny County. She entered the home and resided there for four months but spent the eighth and ninth months of her pregnancy at the home of the female obstetrician[2] who later served as the intermediary in placing the child with the adoptive parents.

On December 21, 1961, almost three months after the surrender of the child, the natural mother (accompanied by her attorney and her mother) appeared at the hospital in Latrobe for a blood grouping test in connection with a pending paternity proceeding against the putative father. The child was brought to the hospital by the obstetrician-intermediary, and the natural mother, child and others were together for several hours. During this visit, the natural mother voiced no desire to keep the child (or to arrange to visit her). Upon leaving the hospital, the intermediary returned the child to the adoptive home.

On October 3, 1962, appellant appeared before the Westmoreland County grand jury as a Commonwealth witness in the proceeding against the putative father. During her interview with the district attorney and others, she exhibited no interest in the custody of the child.

The record is clear and undisputed, as the lower court found, that the natural mother "made no attempt to regain custody of the child or to ask for its

[1] At this point in her direct testimony, she added: "And that is what I didn't want to do. But it seems as though as if I should because we had planned on getting married and the postponement."

[2] Arrangements for appellant's stay were made when she and her mother visited the office of the physician in June, 1961. On that occasion, adoptive placement was discussed and planned.

504

[her] return until October, 1962." She explained her inaction from the time of surrender of the child (September, 1961) until October, 1962, in these words (at the hearing of October 23, 1962) : "I was so worried and so sick, I was so worried about my health that I was afraid I couldn't care for her. Financially I knew my parents would help me. But I just wasn't secure enough in a financial way. So this summer things became much better and my father signed his entire share of our property over to me. Now I feel, I know I can, care for her myself with the aid of some support from my father" and again (at the hearing of November 7, 1962) : "Well, I talked to the priest and he advised me, we do have to respect the advice of the priest, but I never wanted to give her up at all. Then after I wasn't feeling good, I was worried and I was sick, and financially I didn't feel I could care for her. So in June I started getting better and I went to see my father and he deeded over the interest in the property to me and now I feel and I know I can take care of her financially."

"Abandonment" under our Adoption Act "means conduct on the part of a parent which evidences a settled purpose of relinquishing parental claim to the child and of refusing or failing to perform parental duties."[3] This Court has on many occasions construed, discussed and applied the abandonment provisions of the adoption statute. See, e.g., *Hangartner Adoption Case,* 407 Pa. 601, 181 A. 2d 280 (1962) ; *Maisels Adoption Case,* 395 Pa. 329, 149 A. 2d 38 (1959). We said in *Davies Adoption Case,* 353 Pa. 579, 587, 46 A. 2d 252, 256 (1946), that abandonment "requires an intent to escape parental responsibility, and conduct in effectuation of such intent . . . ." "Actually, a finding of abandonment is an ultimate conclusion of fact de-

[3] 1925, P. L. 127, §1, as amended, 1 P.S. §1 (1963).

duced or inferred by reasoning from established facts . . . ." *Ashton Adoption Case,* 374 Pa. 185, 195, 97 A. 2d 368, 374 (1953).

Viewing the evidence in the light most favorable (and even sympathetic) to the natural mother, the record is unmistakably clear that for a period of approximately thirteen consecutive months she manifested no interest whatever in the child and exhibited no concern for her care or well-being. The natural mother failed to supply any of the physical and emotional requirements of her child. Surely, well-known to everyone are the basic needs of a child and the principles by which a parent of an infant must abide. She permitted others to give the child that which she herself withheld too long from her—necessary care and affection. Following the surrender of her daughter, she removed herself completely from the natural mother-child relationship. Appellant hardly could have demonstrated less interest in the child were she a complete and total stranger to her and unaware of her existence.

Parental rights may not be preserved by complete indifference to the daily needs of a child or by merely waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities (while others adequately provide the child with her immediate and continuing physical and emotional needs). The parental obligation is a positive duty and requires affirmative performance which may not be delayed beyond the statutory period by the parent if the parental right is not to be forfeited.

Careful review of the entire record compels the inescapable conclusion that the appellant did, in fact, abandon her child. Appellant's failure to affirmatively respond as a parent to the natural and day to day needs of her daughter for a period of more than six

months is positive proof of the mother's settled purpose to forego all parental duties and to relinquish all parental claims to her child and deprives her of the right to successfully oppose this adoption. Her assertions of interest in the child during the adoption hearings are insufficient to overcome the unmistakable fact of her abandonment which existed for about a year. "Abandonment is not an ambulatory thing the legal effects of which a delinquent parent may dissipate at will by the expression of a desire for the return of the discarded child." *Davies Adoption Case,* supra, at 587, 46 A. 2d at 256.

The court below had no alternative but to find as a fact that the natural mother had abandoned her child for longer than the statutory period. To conclude otherwise would have been manifest error.

Decree affirmed. Each party to pay own costs.