## Appeal of Diane B.

Argued April 16, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Mark I. Weinstein,* with him *Alan Linder, J. Richard Gray,* and *Tri-County Legal Services,* for appellant.

*Peter M. Mattoon,* with him *John V. Bonneau, Alan M. Hawman, Jr., Ballard, Spahr, Andrews & Ingersoll,* and *Derr, Hawman & Derr,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 1, 1974:

On June 13, 1973, the Lutheran Children and Family Service of Eastern Pennsylvania, in accordance with section 312 of the 1970 Adoption Act,[1] filed a petition to terminate the parental rights of Diane with respect to her four and one-half year-old daughter, Kimberly. Following a hearing,[2] the orphans' court on October 4,

---

[1] Act of July 24, 1970, P.L. 620, No. 208, art. III, § 312, 1 P.S. § 312 (Supp. 1973).

[2] See id. § 313, 1 P.S. § 313 (Supp. 1973).

1973, granted the petition. This appeal ensued;[3] we affirm.

Eighteen year-old Diane, an unmarried woman, gave birth on December 29, 1968, to Kimberly. Shortly after Kimberly's birth, Diane and her parents executed a written authorization permitting the Lutheran Children and Family Service of Eastern Pennsylvania to remove the child from Reading Hospital for "proper placement and/or for legal adoption." Pursuant to this authorization, Kimberly was placed in appellee's custody on January 3, 1969, and has since remained in its care.

After appellee assumed custody of the child, Diane on February 5, 1969, agreed to pay $5.00 per week for the support of her daughter. No payments, however, were made under this agreement. As a consequence, more than two years thereafter, on April 5, 1971, a court order of support at the rate of $10.00 per week was entered against appellant. Payments totaling $60.00 were made between April 8 and June 18, 1971. Between May 30 and July 25, 1972, an additional $211.00 was paid, $186.00 of which was paid in compliance with a writ of capias issued against Diane. Her last payment, $100.00, was tendered on January 24, 1973, upon special demand of the non-support office. Thus during the four and one-half years between Kimberly's birth and the filing of the petition for involuntary termination—a period during which Diane regularly was employed—she only sporadically contributed toward the support of her daughter. Aside from a total of $371.00 support, she did not otherwise provide for Kimberly's care.

During this period Diane was never denied the right to visit Kimberly but rarely saw the child. Although

---

[3] For this Court's jurisdiction, see the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp. 1973).

her visits were at first regular, they gradually decreased in frequency. Twelve scheduled visitation appointments were not kept; only twenty-six visits were made during the fifty-four month period following Kimberly's birth. Diane's last visit was on September 30, 1972, and she has not since asked for a visit or had contact with her daughter. Moreover, despite appellee's frequent encouragement and proffered assistance, Diane never proposed a plan for her personal care of Kimberly or attempted to make a home for her child.

Faced with these unfortunate facts, the orphans' court, relying specifically on section 311(2) of the 1970 Adoption Act,[4] concluded: "Diane . . . has by repeated and continued incapacity, neglect, and refusal caused her child to be without essential parental care or subsistence necessary for her physical and mental well-being, and although frequently requested and assisted, has failed to remove the conditions and cause of her incapacity, neglect and refusal to support her child." 66 Berks County L.J. 25, 28 (Pa. O.C. 1973).[5]

---

[4] Section 311(2) provides that parental rights may be terminated if: "The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent." Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311(2), 1 P.S. § 311(2) (Supp. 1973). See also *Jones Appeal*, 449 Pa. 543, 297 A.2d 117 (1972).

[5] A related provision of the Adoption Act, section 311(1), states that parental rights may be terminated if: "The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties." Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311(1), 1 P.S. § 311(1) (Supp. 1973). To the extent both sections involve the duty of a parent to care for the child, decisions under one section may fruitfully be used in discussing the provisions of the other.

A parent has the responsibility to provide care, control, and subsistence for his or her child, and a "duty to love, to protect and to support [the] child." *Wischmann Adoption Case*, 428 Pa. 327, 331, 237 A.2d 205, 207 (1968). This parental obligation "is a positive duty and requires affirmative performance." *Smith Adoption Case*, 412 Pa. 501, 505, 194 A.2d 919, 922 (1963); see *Owen Adoption*, 51 Pa. D. & C.2d 761, 767-68 (C.P. Mercer County 1971).

It has recently been stated: "Parenthood is not . . . a mere biological status, or passive state of mind which claims and declines to relinquish ownership of the child. It is an active occupation, calling for constant affirmative demonstration of parental love, protection and concern. . . . [A parent] must exert himself to take and maintain a place of importance in the child's life, and must exercise reasonable firmness in declining to yield to obstacles. Otherwise, he cannot perform the job of parent, and the parent-child relationship will deteriorate as the absent parent more and more gives his thoughts, attentions, concern and priorities to his own life and associates." *In re: Adoption of JRF*, 27 Somerset L.J. 298, 304-05 (Pa. C.P. 1972).

The testimony adduced at the hearing evidences that Diane was woefully deficient in providing essential parental care, control, and subsistence for her child. Although the natural mother was financially able to contribute to Kimberly's support, she allowed others to provide completely for the child during the first two years of Kimberly's life. And she irregularly made only some minimal support payments thereafter upon court demand. Although she was encouraged and permitted to visit Kimberly, Diane missed scheduled appointments with increasing frequency and for more than eight months preceding the filing of the termination petition did not attempt to see the child. All during this period others took care of Diane's child and pro-

vided Kimberly with the care and comfort necessary to her physical and mental well-being. Others, as best they could, performed all parental duties and responsibilities; Diane did not fulfill her parental obligation. Cf. *Adoption of MP,* 24 Fiduciary Rptr. 210, 213 (Pa. O.C. Lancaster County 1974).

A parent may, of course, fulfill parental duties and provide for a child by making suitable arrangements for the child's temporary care, *Wolfe Adoption Case,* 454 Pa. 550, 557, 312 A.2d 793, 796-97 (1973), or by allowing others to provide essential parental services during a period of crisis. See *In re: Involuntary Termination of Parental Rights to S.M.D.,* 40 Northampton County Rptr. 83, 87 (Pa. C.P. 1971). However, four and one-half years of increasing neglect, refusal, and dereliction of the parental duty to care for and support the child does not satisfy the affirmative parental responsibility. For as this Court stated in *Smith Adoption Case,* 412 Pa. at 505, 194 A.2d at 922: "Parental rights may not be preserved by complete indifference to the daily needs of a child or by merely waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities (while others adequately provide the child with her immediate and continuing physical and emotional needs)." Affirmative response to the continuing needs of the child is required if the parental right is not to be forfeited.

Appellant argued in the orphans' court, as she does on appeal, that she did not have a "settled purpose" of relinquishing parental rights, and that she had the desire to keep Kimberly. Although a "settled purpose" was formerly an essential prerequisite to termination of parental rights, see, e.g., *Harvey Adoption Case,* 375 Pa. 1, 99 A.2d 276 (1953), the 1970 Adoption Act abandoned this requirement in certain cases. Parental rights may now be terminated despite a "desire" to keep the

child. See *Loar Adoption,* 56 Pa. D. & C.2d 618, 623 (C.P. Mercer County 1972). "A lingering hope to be a [parent] is not sufficient in law or fact to satisfy the requirements of the statute." *Owen Adoption,* supra at 768. Here, a long history showing virtually no attempt on appellant's part to perform her affirmative parental responsibility sustains the court's conclusion that appellant's refusal and neglect is irremediable and that she forfeited her parental rights. Cf. *In re: Adoption of R.I.,* 455 Pa. 29, 30 n.3, 312 A.2d 601, 602 n.3 (1973). We can therefore only conclude that the court's decree is properly bottomed on section 311(2) of the Adoption Act.

Appellant contends, nonetheless, that the court erroneously relied on section 311(2) because appellee's petition was cast in the language of section 311(1),[6] as indeed it was. Both sections, however, address refusal to perform essential parental duties—care, control, love, protection, support, and subsistence. Consequently, appellant was on notice that the basis of the petition was her failure to be a parent. It was for the court to determine whether that refusal was wilful throughout a continuous six-month period[7] (section 311(1)) or repeated, continued, and irremediable (section 311(2)). The proof supports the latter conclusion.

Even assuming the petition was imprecisely drafted, the asserted defect would not warrant disturbing the court's decree. "The [orphans'] court at every stage

---

[6] The petition avers that "the mother by conduct continuing for a period of six months has evidenced a settled purpose of relinquishing parental claim to the child and has refused and failed to perform duties to the child." This allegation essentially states each ground for termination enumerated in section 311(1) of the Adoption Act. See note 5 supra.

[7] See *In re: Involuntary Termination of Parental Rights to B.O., M.O. & D.O.,* 40 Northampton County Rptr. 251, 253-54 (Pa. C.P. 1971), aff'd per curiam, 448 Pa. 528, 291 A.2d 771 (1972).

of any action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties in interest." Pa. O.C.R. § 2, rule 1. In *Wischmann Adoption Case,* 428 Pa. 327, 237 A.2d 205 (1968), this Court, when confronted with a similar challenge, affirmed a decree terminating parental rights. There, abandonment had been proved but not alleged. In this case, as in *Wischmann*: "It would have been proper to amend the pleadings to conform to [the] proof. The failure to amend the petition is merely a formal defect. To invalidate the decree because of it would be senseless." Id. at 333, 237 A.2d at 208. See also *Noone Adoption Case,* 376 Pa. 437, 445-46, 103 A.2d 729, 732-33 (1954) ; *Flynn v. Rodkey,* 192 Pa. Superior Ct. 56, 60-61, 159 A.2d 265, 268 (1960).

Decree affirmed; each party pay own costs.