331 A.2d 419
**In re ADOPTION OF Mark Clarence McAHREN et al.**
**Appeal of Clarence McAHREN.**

Supreme Court of Pennsylvania.

Argued Nov. 11, 1974.

Decided Jan. 27, 1975.

Richard A. Behrens, Hollidaysburg, for appellant.

T. Dean Lower, Hollidaysburg, for appellees, Edith Ellen Malach and Arnold Malach, Jr.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

JONES, Chief Justice.

On June 7, 1972, the appellees, Edith Ellen Malach, the natural mother of the subjects of this appeal, and her husband, Arnold Malach, Jr., filed a petition for the adoption of the three minor sons of appellant, Clarence McAhren, in the Orphans' Court Division of the Court of Common Pleas of Blair County. A hearing was held shortly thereafter and the matter was continued in order to afford the appellant, a Kansas resident, an opportunity to obtain certified copies of records filed in the District Court of Pratt County, Kansas. After an additional hearing was held, in an opinion and decree dated August 2, 1973, the Blair County Court held that Mr. McAhren had abandoned his children for periods exceeding six months in accordance with Section 311 of the 1970 Adoption Act, thereby forfeiting his parental rights, and granted appellees' petition for adoption.[1] Following appellant's filing of exceptions to the August

1. Section 311(1) of the 1970 Adoption Act, Act of July 24, 1970, P.L. 620, § 311, 1 P.S. § 311 (Supp.1973), provides:

"§ 311. Grounds for involuntary termination

The rights of a parent in regard to a child may be terminated after a petition filed pursuant to section 312, and a hearing held pursuant to section 313, on the ground that:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties . . . ."

The trial court based its finding of abandonment on a "settled purpose to relinquish parental claims *and* a refusal or failure to perform parental duties." (Emphasis added) ("Abandonment" was defined as such in the Act of April 4, 1925, P.L. 127, § 1 (now repealed).) The 1970 Adoption Act, however, permits termination without a finding of abandonment, provided any *one* of

ruling, the trial court reaffirmed its previous findings and confirmed its prior decree. This appeal followed.

The only question properly before this Court is whether the record clearly warrants a finding under Section 311(1) of the 1970 Adoption Act that appellant has evidenced a settled purpose to relinquish his parental claims or that appellant has refused or failed to perform his parental duties in excess of six months. We hold that the evidence does not justify the termination of appellant's parental rights under Section 311(1) and hence vacate the lower court decree.

The facts underlying this appeal are as follows: On August 17, 1959, Clarence McAhren and Edith Malach were married. Following their marriage, Mrs. Malach gave birth to three sons: Mark Clarence McAhren on March 3, 1961, in Stafford, Kansas; Scott Eric McAhren on August 30, 1963, in Pratt, Kansas; and Kent Allen McAhren on December 29, 1967, in Altoona, Pennsylvania. On January 8, 1968, the McAhrens were divorced by a decree entered by the Court of Common Pleas of Blair County and thereafter on October 26, 1968, Mr. and Mrs. Malach were married. Appellant's three sons have since resided with the Malachs in Altoona, Pennsylvania.

After the McAhrens' divorce and as a result of a proceeding initiated by Mrs. Malach in the Blair County Common Pleas Court pursuant to the Revised Uniform Reciprocal Enforcement of Support Act, (1968) as renumbered by 1972 Dec. 6, P.L. No. 291, § 42, 62 P.S. § 2043–1 et seq., the appellant was directed to pay $100.00 monthly, beginning in February 1969, for the support and maintenance of his three children. Subsequently, the monthly support was increased by order of the same court dated October 18, 1971, to the sum of $150.00.

the three grounds set forth in Section 311(1) is demonstrated by a preponderance of the evidence. *See* Appeal of B., 456 Pa. 429, 321 A.2d 618 (1974), and *In re Cassen,* Pa., 326 A.2d 377 (filed October 16, 1974).

At the adoption hearings below it was established that payments had been made beginning in February 1969 and continuing through October of 1971. However, whether payments were made after October 1971 was hotly contested. Although appellant's attorney presented certified records from the Pratt County Court indicating that payments in November and December of 1971 had been forwarded to Mrs. Malach, it was not resolved whether such payments were actually received. Appellees strenuously denied ever receiving any support checks after October of 1971, and it was established that payments had not been forwarded to the Malachs in or after January of 1972. In defense of his apparent non-compliance with the October 1971 support order, Mr. McAhren alleged that payments covering the first six months of 1972 had been impounded by the Pratt County Court. In further support of his contention, appellant's counsel produced Pratt County records indicating that a $900.00 payment had, in fact, been placed in escrow on June 14, 1972, a month prior to the first adoption hearing.[2]

The record in this case reveals that, although the appellant had contributed substantially to the support of his children in 1969, 1970 and 1971, he ceased doing so in 1972 because his efforts to communicate and visit with his children were being rebuffed. Prior difficulties in this regard had temporarily been resolved subsequent to appellant's filing of a habeas corpus petition in March of 1971. Pursuant to this petition, on June 10, 1971, the Blair County Court ruled that appellant be given the right to temporary custody of his children from June 13

---

2. Although not stressed by the lower court, the parties in the matter have continually struggled over visitation and support. As a result of appellant's efforts, in September of 1970 and March of 1971, the Pratt County Court ordered that support payments be impounded by the court clerk until such time as reasonable visitation rights were granted. Consequently, appellant had a history of escrow payments. Moreover, although visitation privileges were finally adjudicated in the Blair County Court in June of 1971, appellant contends that his most recent withholding of payments was in compliance with the 1971 Kansas court order.

to July 13 each year commencing in June of 1971. Accordingly, appellant's sons visited their father on his farm in Kansas during the summer of 1971.

The hearing judge noted that appellant had tried on a number of occasions, after having the temporary custody of his boys, to continue communications. The testimony at the hearings established that following at least one letter in the Fall of 1971, McAhren sent his boys two Christmas cards as well as a Christmas letter asking what gifts the boys might desire. Nevertheless, these and subsequent communications went unanswered. Further, the appellees admitted that some time after the children's summer visit to their father's farm, a package, sent from Kansas and addressed to the McAhren boys, was refused by Mrs. Malach, that appellant's eldest son received a birthday card from Mr. McAhren in March of 1972 and that in either October or November of 1971, an "unidentified long distance caller" tried to reach the McAhren boys. Appellant claimed that the preceding uncontested communications were not the extent of his efforts, but that other attempts to telephone, write and send gifts were thwarted by the Malachs. In further and final support of his contentions, appellant was able to establish that in early June of 1972, his local counsel wrote the Malachs of his desire to again obtain temporary custody of the boys. In response to this letter, appellant was advised that visitation privileges would be refused and that an adoption petition had been filed.

■■ It is evident from reviewing the opinion of the lower court that the determination to permit the adoption of appellant's three boys was based on two beliefs: (1) that the evidence of Mr. McAhren's failure to support his sons from January through June of 1972 was both qualitatively and quantitatively sufficient to warrant a permanent severance of Mr. McAhren's parental rights; and (2) that the children's best interests would

be served by the adoption.[3] We need only consider the first reason, however, since in the absence of sufficient evidence to satisfy the statutory requirements for involuntary termination, the question of the best interest of the child never arises. *See, e. g., Sheaffer Appeal,* 452 Pa. 165, 305 A.2d 36 (1973) ; *Sarver Adoption Case,* 444 Pa. 507, 281 A.2d 890 (1971) ; *Gunther Adoption Case,* 416 Pa. 237, 206 A.2d 61 (1965) ; and *Schwab Adoption Case,* 355 Pa. 534, 50 A.2d 504 (1947).

 It is well established that, in view of the irreversible nature and serious emotional impact of the involuntary termination of parental rights, such action is not authorized unless a preponderance of the evidence clearly warrants it. *Sarver Adoption Case, supra;* and *Jacono Adoption Case,* 426 Pa. 98, 231 A.2d 295 (1967). With this in mind, it is essential to determine whether the appellees' burden was met in regard to any one of the criteria set forth in the involuntary termination provision of the 1970 Adoption Act.

 Initially, we note that in the past when this Court has been confronted with evidence of a "failure to support," we specifically held that such evidence, although to be considered, was not, standing alone, conclusive of an intent to abandon. *Vaders Adoption Case,* 444 Pa. 428, 282 A.2d 359 (1971) ; and *Hangartner Adoption Case,* 407 Pa. 601, 181 A.2d 280 (1962). In view of this warning and since nowhere in the record was it demonstrated that appellant evidenced an "affirmative indication of a positive intent" to sever parental relations,

---

**3.** Most of the testimony adduced at the first hearing concerned the differences in life styles between the contending fathers. Further, there was testimony by the eldest son that he was angry with his natural father and wished to be adopted. Although such feelings are unfortunate, we are cognizant that an adolescent's emotions toward a parent often change by adulthood. Nevertheless, should this son still wish to be adopted when he reaches eighteen, the law permits him to do so. *Sarvar Adoption Case,* 444 Pa. 507, 511, 281 A.2d 890, 892 (1971).

*Sheaffer Appeal, supra,* 452 Pa. at 170, 305 A.2d at 39; *Sarver Adoption Case,* 444 Pa. at 510, 281 A.2d at 892, the conclusion that there was insufficient evidence to justify a finding of an "intent to abandon" is inescapable. Nevertheless, since a finding of a settled purpose or intent to relinquish parental rights is no longer a prerequisite to involuntary termination, *Appeal of B.,* 456 Pa. 429, 433, 321 A.2d 618 (1974),[4] our inquiry must necessarily turn to the more delicate issue of whether the failure to support in the particular circumstances presented here sufficiently satisfies the alternative requirements of the new Adoption Act, namely, "a refusal or failure to perform parental duties."

To make this determination we must review what is meant by a "performance of parental duties." Accordingly, we note that parental duties by definition must be comprised of more than one responsibility. Pennsylvania law was recognized that not only is there a duty to love, protect and support one's child, *Wischman Adoption Case,* 428 Pa. 327, 331, 237 A.2d 205, 207 (1968), there is also a duty to maintain communication and association with that child. *See Appeal of B., supra; Jacono Adoption Case, supra;* and *In re Adoption of J. R. F.,* 27 Somerset L.J. [295] 298 (Pa.C.P.1972). Consequently, being a parent is more than a passive state of mind or a financial obligation; rather "it is an active occupation, calling for constant affirmative demonstration of parental love, protection and concern. . . . [A parent] must exert himself to take and maintain a place of importance in the child's life." *Appeal of B., supra,* 456 Pa. at 333, 321 A.2d at 620, *quoting In re Adoption of J. R. F.,* 27 Somerset L.J. at 304–305. Viewing the performance of parental duties as an affirmative obliga-

4. In this regard we have noted that there will be cases where a parent may forfeit his rights despite a desire to remain the parent and/or where the parent evidences a concern for the child's welfare. *See Appeal of B.,* supra.

tion to perform a *composite* of "tasks," it becomes clear that dereliction of *one* responsibility, albeit a responsibility as important as support, may not under the particular circumstances warrant a complete termination of parental rights.

In this case, it was determined that the natural father, troubled by the fact that all communications to his children had gone unanswered, withheld support for at least six months. We do not condone the retaliatory measures taken here, nor do we mean to imply that appellant was pursuing the proper "legal recourse."[5] However, it is clear such action was taken in an effort to *preserve* rather than avoid the parent-child relationship that had existed prior to 1972. In further support of this determination, we note that appellant had *continually* persisted in sending communications to his children. We are not faced with a case where the parent had sent only one or two greeting cards over the years or where the parent has demonstrated an interest in the child only upon initiation of adoption proceedings. *Compare, e. g., Jagodzinski Adoption Case,* 444 Pa. 511, 281 A.2d 868 (1971); *Wischmann Adoption Case,* 428 Pa. 327, 237 A. 2d 205 (1968); *In re Hookey's Adoption,* 419 Pa. 583, 215 A.2d 860 (1966); and *Smith Adoption Case,* 412 Pa. 501, 194 A.2d 919 (1963). Rather, upon a review of the evidence, we find a concerned parent who has sent at least one package, cards and letters throughout the period under consideration and who tried continually to enforce his visitation privileges. It was appellant's efforts to maintain a place of importance in his children's lives that lay at the heart of the appellees' petition. Accord-

5. It is unclear why this appellant did not pursue the legal avenues already available to him, namely, court enforcement of the June 1971 Blair County Court visitation order. However, by the same token, there was no explanation why appellees did not pursue their legal alternative of enforcing the October 1971 Blair County Court support order before resorting to adoption proceedings.

ingly, taking these facts together, we cannot find that the evidence offered below supported the proposition that appellant had evidenced an intent to abandon or that appellant had refused or failed to perform his parental duties. Adoption is not permitted without the parents' consent or sufficient evidence to justify the enforced permanent severance of parental rights; since neither exists here, the lower court order and decree cannot stand.

Decree vacated. Each party to pay own costs.

MANDERINO, J., concurs in the result.