369 A.2d 1200
In re Involuntary Termination of Parental
Rights and ADOPTION OF BABY
GIRL FLEMING, a minor.

Appeal of Frank J. YELINKO and
Elizabeth J. Yelinko.

Supreme Court of Pennsylvania.

Argued Oct. 13, 1976.

Decided Feb. 28, 1977.

Gross & Brown, Malcolm J. Gross, Allentown, for appellant.

William Congreve, III, Allentown, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

JONES, Chief Justice.

This is an appeal by the prospective adoptive parents from the denial of their Petition for Involuntary Termination of the parental rights of the natural mother. The child in question was born December 6, 1973. The father has consented to the adoption by petitioners.

Appellee, the natural mother, and the child's father were married and lived together for about a week until appellee ousted him from their residence. She later moved in with her parents until after the baby was born. Prior to the birth, appellee sought assistance from vari-

ous agencies regarding placing her child for adoption. In November 1973, she made an appointment, through her physician, with Boyd Walker, Esquire, concerning the arrangement of a private adoption.

Both appellee and her mother attended this meeting during which appellee was informed about the process and the payment of expenses. It was appellee's understanding at the end of the meeting, that when she delivered the baby to the intermediary, all rights to recover the child would terminate. Appellee delivered the baby to an intermediary at the hospital on December 10, 1973, four days after her birth. She has not seen the child since that date.

The mother received no further word, nor did she make any inquiries, concerning the adoption until August 1974 when she contacted Mr. Walker to find out what was the cause of the delay in finalizing the adoption. In that month, Donald Zamborsky, Esquire, representing the adoptive parents, called appellee to ascertain the whereabouts of the baby's father. Subsequently, in April 1975, Mr. Zamborsky again contacted her in order to have her sign a consent to the adoption. Appellee signed the consent, but, as a result of this meeting, she apparently thought she may have an opportunity to get her child back. Appellee notified Mr. Zamborsky, in June 1975 prior to the hearing on the voluntary proceedings, that she would not go through with the voluntary termination proceedings. A petition for involuntary termination was filed by the persons having custody of the child. After a hearing, the court below refused to terminate appellee's rights and denied the petition. This appeal followed.[1]

Appellants sought to terminate the mother's rights *solely* upon the first part of Section 311(1) of the Adop-

---

1. Jurisdiction over this matter is conferred by the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1976).

tion Act, Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311(1), 1 P.S. § 311(1) (Supp.1976). That section reads in pertinent part:

"The rights of a parent in regard to a child may be terminated . . . on the ground that:
(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child . . .."

*Id.*

Section 311(1) "has been interpreted as requiring a deliberate decision on the part of the parent to terminate the parental relationship and that parent must persist in that determination throughout the six-month period." *In re Adoption of Farabelli*, 460 Pa. 423, 430–431, 333 A.2d 846, 850 (1975). The term "settled purpose" implies a finality of purpose. *Wolfe Adoption Case*, 454 Pa. 550, 312 A.2d 793 (1973). In our efforts to determine if such a purpose was present, this Court has required an "affirmative indication of a positive intent" to sever the parental relationship before we have upheld an involuntary termination. *In re Adoption of McAhren*, 460 Pa. 63, 70, 331 A.2d 419, 423 (1975); *Wolfe, supra.*

This Court has recognized that because of the serious emotional impact and irreversible nature of an involuntary termination decree, such action should be taken only when it is clearly warranted by a preponderance of the evidence. *McAhren, supra*, at 69–70, 331 A.2d at 422; *Sarver Adoption Case*, 444 Pa. 507, 281 A.2d 890 (1971). We have also placed this burden of proof upon those seeking termination. *See In re Adoption of Mc-Cray*, 460 Pa. 210, 215 n. 4, 331 A.2d 652, 654 n. 4 (1975). Thus, this Court has held that evidence of parental inaction and lack of interest for six months does not conclusively establish a settled purpose. *Wolfe, supra.* Nor can a recanted *voluntary* termination petition

support an *involuntary* termination on settled purpose grounds when the petition was withdrawn before a final decree, even though custody had been relinquished for over six months. *Sheaffer Appeal,* 452 Pa. 165, 305 A. 2d 36 (1973).

■■ In reviewing the decision of the court below, we must consider the testimony and determine whether the findings of the court are supported by competent evidence. *Farabelli, supra.* Therefore, the issue before us is whether the trial court correctly concluded that appellant failed to establish by a preponderance of the evidence that the mother evidenced a settled purpose of relinquishing her claim to the child for at least six months. We uphold the decision of the court below.

The instant case is similar to *Sheaffer, supra.* In that case, the mother voluntarily placed the child with a children's services agency. She signed two agreements regarding her consent to adoption within four months after this placement. However, she subsequently withdrew the consent before a decree was issued but after more than six months had elapsed since the placement. Involuntary termination proceedings were initiated and the court, finding that the mother had abandoned her child within the meaning of Section 311(1), terminated her rights. On appeal, this Court vacated that decree stating:

"Before the hearing and decree of termination by the court, the appellant manifested an intent to halt the *voluntary* termination proceedings. The appellee urges that the child's placement in the Bureau's custody for a period of more than six months 'has evidenced a settled purpose of relinquishing parental claim to [the] child' and justifies a decree of *involuntary* termination. We disagree.

An adjudication of abandonment necessitates a finding of neglect coupled with an affirmative indication

of a positive intent to abandon the child. *Vaders Adoption Case*, supra [444 Pa. 428, 282 A.2d 359]; *Hangartner Adoption Case*, 407 Pa. 601, 181 A.2d 280 (1962); *Harvey Adoption Case*, supra [375 Pa. 1, 99 A.2d 276]. We find neither neglect nor the intent to abandon in this situation. Appellant placed her child with the Bureau pending a final decree in her petition for *voluntary* relinquishment. She properly withdrew her petition before a final decree was entered. That the period of time between the child's placement in foster care and the withdrawal of appellant's consent exceeded six months cannot, in itself, support a decree of *involuntary* termination."

452 Pa. at 170, 305 A.2d at 39.

Appellants argue that *Sheaffer* is not controlling in the instant case because they rely upon an affirmative act by appellee and not upon a recanted petition or the mere passage of time. They assert that the delivery of the child to the intermediary in December 1973 was the affirmative indication necessary to a finding of a settled purpose under Section 311(1). It is argued that at that time, appellee believed her act to be final and irrevocable and, therefore, her intent to relinquish her rights is proven. Thus, this case is also argued to be distinguishable from *Wolfe, supra*, in which the mother believed she could recant within six months.

However, appellee argues that the delivery was not indicative of her true purpose. She testified that she did not want to give up the child but that this decision was forced upon her by parental pressure. Such pressure has been held to vitiate a *voluntary* consent agreement. *See Susko Adoption Case*, 363 Pa. 78, 69 A.2d 132 (1949). Appellee also argues that not until April 1975 was she aware of her right to recant her *voluntary* relinquishment at any time prior to a final court decree of

adoption. She indeed had such a right. *See Chambers Appeal,* 452 Pa. 149, 154, 305 A.2d 360, 363 (1973). If the evidence presented on these claims by appellee were accepted as true, it could rebut the inference of a settled purpose which arises from the affirmative act of delivery of the child to the intermediary. Additionally, such evidence could undermine the argument that a final purpose persisted for the required time period because evidence of subsequent statements or inaction by the mother would have to be viewed in light of her wrongful impression that the adoption was irrevocable in December 1973. Since the evidence as to appellee's voluntary and intelligent decision is in conflict, we believe the trial court was in a better position to resolve any factual dispute. As we stated in *Farabelli* in dealing with a similar issue:

> "We recognize our responsibility in matters dealing with the custody of children to exercise an independent judgment based on the evidence and to consider the testimony and make such an order on the merits of the case as right and justice dictate. *Commonwealth ex rel. Cooper v. Cooper,* 167 Pa.Super. 492, 75 A.2d 609 (1950); *Brown v. Brown,* 206 Pa.Super. 439, 213 A.2d 395 (1965). This power of review is not intended to mean that an Appellate Court is free to nullify the fact-finding function of the Hearing Judge. He alone has had the opportunity to observe the witnesses and appraise their credibility, and deference, for this reason, should be given to his determination as to the weight of the evidence presented. *Commonwealth ex rel. Harry v. Eastridge,* 374 Pa. 172, 97 A.2d 350 (1953)."

460 Pa. at 433, 333 A.2d at 851. Because there is evidence to support such a conclusion, we affirm the ruling that appellant failed to establish the settled purpose necessary to terminate appellee's parental rights.

Decree affirmed. Each party to pay own costs.

ROBERTS, J., filed a dissenting opinion in which EAGEN and O'BRIEN, JJ., joined.

ROBERTS, Justice, dissenting.

Appellants, intending to adopt the child, now age three, they have cared for since she was four days old, filed this petition to terminate the parental rights of the natural mother. The Orphans' Court denied appellants' petition even though the mother had taken no steps to regain custody of the child for a year and a half after she personally delivered the child to an intermediary pursuant to an arrangement for adoption of the infant. The majority holds that appellants failed to establish that the mother relinquished her parental claims under the terms of section 311(1) of the Adoption Act,[1] and affirms the Orphans' Court decree. In my judgment the record clearly establishes that the mother, by conduct continuing for nineteen months, evidenced a settled purpose to relinquish her parental claim to the child. I dissent.

The child, issue of a short and unhappy marriage, was born December 6, 1973. Early in October 1973, appellee, the natural mother, contacted the Children's Bureau in Northampton County to discuss adoption of the yet unborn child. In late October or early November, 1973, appellee again related her plans for adoption while at her physician's office, and was referred to an attorney, with whom she made an appointment to discuss a private adoption.

Appellee and her mother met with the attorney, at which time adoption procedures and financial arrangements for payment of appellee's lying-in expenses were discussed. Appellee agreed to transfer the baby to an intermediary shortly after birth. On December 10, 1973, four days after the child was born, she personally delivered the infant to the intermediary. In doing so, she in-

1. Act of July 24, 1970 P.S. 620, § 311(1), 1 P.S. § 311(1) (Supp. 1976).

tended to relinquish all claims to the child. She testified in the Orphans' Court, "I thought as soon as I handed the baby over, that was it." Appellee has not seen the child, now more than three years old, since that day.

Nine months later, in August, 1974, she called the attorney's office to find out why the adoption had not yet been made final. This phone message was not returned. Later that month appellee was called by a different attorney, who had taken over the matter on behalf of the prospective adoptive parents. He advised her that difficulty in locating the natural father caused the delay, and asked her assistance in locating him. Appellee did not know her ex-husband's address, but provided the attorney with the address of his parents. She gave no indication that she desired the return of the child or had changed her mind regarding the adoption.

Following this conversation appellee made no further inquiries. The attorney did not contact her again until April, 1975, at which time he requested that she come to his office and sign her consent to the adoption. Appellee complied. Not until June, 1975, shortly before the scheduled relinquishment hearing, did appellee make any objection to the adoption.

Upon learning that she desired to withdraw her consent to the voluntary proceeding, the prospective adoptive parents filed a petition to terminate appellee's parental rights. The petition was denied, and this appeal followed.

Appellants seek to terminate the mother's rights pursuant to section 311(1) of the Adoption Act, which provides that parental rights to a child may be terminated on the ground that:

"The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties."

This section requires "a deliberate decision" to end the parental relationship, and this intention must persist for at least six months. *In re Adoption of Farabelli*, 460 Pa. 423, 430–31, 333 A.2d 846, 850 (1975). Mere parental inaction and lack of interest alone is insufficient to establish the necessary settled purpose. *Wolfe Adoption Case*, 454 Pa. 550, 312 A.2d 793 (1973). An "affirmative indication of a positive intent" to sever the parental relationship is required. *In re Adoption of McAhren*, 460 Pa. 63, 70, 331 A.2d 419, 423 (1975); *Sheaffer Appeal*, 452 Pa. 165, 170, 305 A.2d 36, 39 (1973).

The evidence here clearly establishes that appellee made a deliberate decision to sever her parental relationship with the child. Her affirmative acts in delivering the infant to the intermediary and assisting in the adoption, as well as her intent as revealed by her testimony, demonstrate that she had a settled purpose which persisted for well over a year, to relinquish forever her parental claims to the child.

The majority, in affirming the denial of the petition, erroneously relies on *Sheaffer Appeal*, supra. The facts in *Sheaffer* were significantly different. In *Sheaffer* the mother placed her child in foster care, pursuant to an agreement that she could remove the child upon ten days notice to the Bureau of Children's Services. She signed a voluntary consent form, but seven months later took affirmative steps to regain custody. The consent constituted all the evidence on which the termination petition was based. Standing alone, the consent form was insufficient to demonstrate a settled purpose to relinquish parental rights, particularly in light of the agreement under which the mother had relinquished custody.

*Wolfe Adoption*, 454 Pa. 550, 312 A.2d 793 (1973), also relied upon by the majority, is likewise inapposite. There the mother indicated her decision to withdraw her consent to a voluntary relinquishment petition six months and eight days after the petition had been signed. In af-

firming denial of the petition to terminate parental rights, this Court stated:

"The record supports the conclusion that Richard's mother believed and was led to believe that she could enjoy the luxury of indecision for a certain period of time before she had to make a final decision. This does not evidence any *settled purpose*."

Id. at 555, 312 A.2d at 796 (emphasis in original).

Unlike the mothers in *Sheaffer* and *Wolfe,* appellee testified that she personally delivered the infant to the intermediary, intending never to establish or maintain a parental relationship with the child. For nineteen months she persisted in this intent, without in any manner indicating an interest in the child, and taking no steps to gain custody of the child.[2] Additionally, approximately a year after relinquishing the child, she informed the court's adoption investigator that she believed her decision to give up the child was correct. A settled purpose to relinquish parental claims could not be more clearly established.

The majority here fails to recognize the distinction between a parental consent to adoption and a statutory abandonment. Consent to a voluntary relinquishment, pursuant to sections 301–303 of the Act,[3] must be "intelligent, voluntary, and deliberate." *Susko Adoption,* 363 Pa. 78, 69 A.2d 132 (1949). This consent may be made irrevocable by the court at a hearing scheduled ten or more days after the petition has been filed.[4]

2. Appellants stated to the Orphans' Court that they were relying solely on the first part of section (1), 1 P.S. § 311(1). This does not preclude this Court from considering whether the proof supports a finding under another provision. Cf. *Appeal of Diane B.,* 456 Pa. 429, 435–36, 321 A.2d 618, 621 (1974). Because I conclude that the petition should be sustained under the first part of section 311(1), it is unnecessary to decide whether the mother has also "failed to perform parental duties" within the meaning of the second part.

3. 1 P.S. §§ 301–303 (Supp.1976).

4. Id. § 303.

An involuntary termination of parental rights, pursuant to section 311(1), is based on the conduct of the parent, evidencing an intent to relinquish parental rights, which must persist for at least six months before the petition may be granted. Because abandonment is based on the parent's conduct, rather than consent, an "intelligent, voluntary, and deliberate" relinquishment is not a prerequisite to a finding of abandonment.

The distinction between the two methods of terminating parental rights is recognized in the Adoption Act and our case law. Application of the consent standard to involuntary terminations would, in effect, merge section 311(1) with the voluntary relinquishment provisions and nullify its independent statutory significance.

Section 311(1) permits the termination of parental claims when the parent, by choice or neglect, fails to perform parental duties for at least six months. As this Court has noted: " '[A parent] must exert himself to take and maintain a place of importance in the child's life, and must exercise reasonable firmness in declining to yield to obstacles. Otherwise, he cannot perform the job of parent, and the parent-child relationship will deteriorate . . ..' " *Appeal of Diane B.*, 456 Pa. 429, 433, 321 A.2d 618, 620 (1974), quoting *In re: Adoption of JRF*, 27 Somerset L.J. 298, 304–05 (Pa.C.P.1972). "Affirmative response to the continuing needs of the child is required if the parental right is not to be forfeited." *Appeal of Diane B.*, 456 Pa. at 434, 321 A.2d at 621.

The purpose of section 311(1) is to afford a child, whose parent has failed or chosen not to "exert himself to take and maintain a place of importance in the child's life," the opportunity to find elsewhere an effective parent-child relationship, protected from interference by the belated claims of the natural parent. This purpose of protecting the interests of a child cannot be effected if a parent, like appellee, may intentionally remove herself

from the parent-child relationship for nineteen months, and then reclaim the child from the only home it has ever known.

In determining whether there has been an abandonment, the question is not whether the mother has validly consented to the adoption of her child. It is whether, for at least six months, the mother's conduct has evidenced a settled purpose to relinquish her parental claims to the child. If so, the petition should be granted for "[a]bandonment is not an ambulatory thing the legal effects of which a delinquent parent may dissipate at will by the expression of a desire for the return of the discarded child. . . ." *Davies Adoption Case*, 353 Pa. 579, 587, 46 A.2d 252, 256 (1946).

Here the record clearly establishes that the mother demonstrated such a settled purpose. Appellee testified that she intended to relinquish her rights to her child when she personally delivered the infant to the intermediary four days after birth. She was aware of the name and address of the attorney representing the prospective adoptive parents, but initiated a single inquiry during the next year and a half. She made that inquiry only to ask why the adoption had not yet been made final. Although she obtained counsel for her divorce, shortly after the relinquishment, she asked counsel no questions about her rights to the child. Approximately a year and a half after surrendering the child to the care and nurturing of others, she was satisfied that her decision to give up the child was correct. Like the mother in *Smith Adoption Case*, 412 Pa. 501, 505, 194 A.2d 919, 921 (1963), she

". . . failed to supply any of the physical and emotional requirements of her child. Surely, well-known to everyone are the basic needs of a child and the principles by which a parent of an infant must abide. She permitted others to give the child that which she herself withheld too long from her—necessary care and affection."

She abdicated this parental role to appellants, who have voluntarily assumed and performed parental duties.

If this record does not establish a settled purpose to relinquish parental rights, pursuant to section 311(1) it is difficult to conceive of any circumstances in which such a settled purpose could be established. I dissent.

EAGEN and O'BRIEN, JJ., join in this dissenting opinion.