383 A.2d 950

**ADOPTION OF S. M.**

**ADOPTION OF M. M.**

**Appeal of E. M.**

Supreme Court of Pennsylvania.

Argued Jan. 10, 1978.

Decided March 23, 1978.

Reargument Denied May 23, 1978.

Michael Yanoff, Norristown, for appellants.

Peter J. Verderame, Renato S. DeLuca, Langhorne, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

### OPINION OF THE COURT

PER CURIAM:

Decree affirmed. Each party pay own costs.

*Hargrove*, 437 Pa. 582, 263 A.2d 116 (1970); *Commonwealth v. Hargrove*, 445 Pa. 600, 284 A.2d 498 (1971).

314

MANDERINO, J., filed a dissenting opinion.

LARSEN, J., filed a dissenting opinion, in which MAN-DERINO, J., joined.

NIX, J., dissents.

MANDERINO, Justice, dissenting.

I join in the dissenting opinion of Mr. Justice Larsen. In addition, I must point out that this Court has today abandoned its own strict requirements in cases terminating parental rights. We have always required proof by "a preponderance of clear and convincing evidence" that the statutory requirements have been fulfilled before we will take the grave and irreversible action of terminating a parent's rights to his or her natural children. *In re Adoption of P.,* 475 Pa. 197, 380 A.2d 311 (1977); *Adoption of Baby Girl Fleming,* 471 Pa. 73, 369 A.2d 1200 (1977); *In re Adoption of McAhren,* 460 Pa. 63, 331 A.2d 419 (1975).

Under Section 311(1), the finding that a parent has "refused or failed to perform parental duties" does not require proof of intent. This does not mean, however, that a parent's intent may be ignored. When, as here, the evidence warrants the conclusion that the absent parent did intend and did attempt to maintain contact with the children, and was precluded from doing so by the actions of the custodial parent, he has not failed to perform. He has been *prevented* from performing. This can not form a basis for termination of his rights.

> "[Even] [w]here . . . the evidence clearly establishes that the parent has failed to perform his affirmative parental duties for a period in excess of six months, this Court then must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of the circumstances, clearly warrants permitting the involuntary termination of said parent's parental rights and the adoption."

*In re Adoption of P.,* 475 Pa. at 205, 380 A.2d at 315.

This the Court has clearly failed to do. The evidence in this case establishes that the mother made the children entirely unavailable to the father. She removed them to such a distance that contact could be made only by mail, and then did not allow the mail to reach the children. The evidence also establishes that the father's failure to keep up support payments was reasonable because he was unemployed.

The statute requires that the failure to perform not be a "mere temporary matter due to any personal crisis." When failure to keep up with support payments is due to unemployment, it is reasonable to view it as a "temporary personal crisis." The father paid his support when employed, and there is no evidence whatsoever that he would not have resumed payments when he once again had adequate income.

This mother refused to allow the father's visitation rights in blatant disregard of a Court order granting him such rights. She diverted his letters and gifts in clear violation of his rights as a father. She denied him his legal and natural rights by preventing his communication with his children, and then *relied on* that absence of communication to have him erased from his children's lives. It is inconceivable that this Court can condone this travesty by affirming the result in this case.

LARSEN, Justice, dissenting.

I dissent. Appellant (E.M.) appeals from the decree of Orphans' Court Division of the Court of Common Pleas of Montgomery County which terminated his parental rights to his natural children and ordered their adoption by appellee (J.S.), who is now the husband of the children's natural mother (S.S.). The trial court found, in essence, that appellant "by conduct continuing for more than six months, to wit, from December, 1975 to September or October, 1976, has refused and failed to perform, or even to offer to perform, parental duties toward [his children]" and "[s]uch failure or refusal to perform or offer to perform parental duties was not a mere temporary matter due to any personal

crisis of [appellant], and he failed for said period to exercise reasonable firmness to overcome such obstacles as there may have been to his attempting to maintain communication and association with [his children] and otherwise to discharge his parental responsibilities towards [them]." Finally, the court found that it would be in the best interest of the children if the Adoption and Involuntary Termination Petition be granted.

The conduct of the mother of the children demonstrates that she has acted in a manner that is not in the best interest of the children and, in fact, her conduct calls into question her fitness as a mother. During the period of time from the visitation order (June, 1975) until her departure from California to Maryland (January, 1976), the mother constantly attempted to deny appellant his visitation with the children and to a large extent she was successful. She notified the day school where the children were attending that appellant was not to be permitted to pick the children up even though his Wednesday visitation hours started at the time of the daily school closing. She told appellant not to come to her residence for his Saturday visitation (the children lived with her). On one occasion she and her boyfriend (appellee) came to appellant's home and forcefully removed the children. In January, 1976, she moved with the children from California to Maryland without any advance notice to or discussion with appellant. Appellant received a registered letter from the mother from Maryland in January, 1976, advising him of said move. There were *no* further communications from her. In April of 1976, the mother's aforementioned boyfriend transferred from California to Pennsylvania, at which time the mother and boyfriend were married. The boyfriend-husband (J.S.) now seeks to adopt the appellant's two children without appellant's consent claiming that, for a period of six months, appellant has refused or failed to perform parental duties. 1 P.S. 311(1).

Appellant paid no support, but he was unemployed and drawing $104 per week unemployment compensation. (When he did work, he paid support.) The mail and gifts he

sent to the children from January, 1976 through September, 1976 were never given to the children by the mother. (She gave the gifts to some other children.) In fact, she never discussed, encouraged or furthered in any way the relationship of the children and father.

When one parent has the custody of the children, there is an affirmative duty on the part of that parent to foster and encourage the relationship of the children with the absent-separated parent. The mother in this case acted completely contra. After her marriage to the boyfriend-husband, she moved to Pennsylvania with the children. Again, appellant was never notified.

The children were too young for appellant, who was 3,000 miles away, to establish a separate, independent relationship with his child. (In January, 1976, one child was 2 years and 4 months old and the other was 3 years and 11 months old.) The mother's assistance and help were needed. These were not forthcoming. Her obvious hostility for appellant was acted out via the children. This Court should not tolerate children being used as the ping-pong ball in the game of unsuccessful interpersonal relationships. Given the geographic distance separating appellant from his children, the children's ages, the mother's determined effort to undermine and terminate the relationship of father-children and appellant's financial plight, appellant did, *under the circumstances,* meet the standard of attempting to and performing his parental duties.

Finally, the lower court had no evidence before it to be able to draw the conclusion that it would be in the best interest of the children to grant the Adoption and Involuntary Termination Petition. I, therefore, dissent and would reverse.

MANDERINO, J., joins in this Dissenting Opinion.