387 A.2d 1289

**In re A. M. B., K. E. B., J. B., K. B., and M. B., minor children.**

**Appeal of J. D. B. and A. M. K. B., natural parents of said infant children.**

Supreme Court of Pennsylvania.

Argued March 8, 1977.

Decided June 5, 1978.

Thomas H. Newbraugh, Southwestern Pa. Legal Aid Society, Waynesburg, Jon L. Friedman, Pittsburgh, for appellant.

R. Wallace Maxwell, Waynesburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

194

**ORDER**

The Court being equally divided, the decree of the lower court is affirmed.

O'BRIEN, ROBERTS and POMEROY, JJ., would affirm the decree.

NIX, J., files an opinion in support of reversal, in which MANDERINO, J., joins.

EAGEN, C. J., would reverse the decree.

Each party to pay own costs.

**OPINION IN SUPPORT OF REVERSAL**

NIX, Justice.

This is an appeal from a decree of the Greene County Court of Common Pleas, Orphans' Court Division, which involuntarily terminated the parental rights of J.D.B. and A.M.K.B. to their five minor children.[1] The lower court appears to have relied on subsection (1) of the Adoption Act of 1970, July 24, P.L. 620, No. 208, art. III, § 311(1), 1 P.S. § 311(1) (Supp.1977–78) for the termination of appellant's parental rights.[2] The basis for a finding of involuntary termination must be established by a preponderance of the evidence. *Matter of S.*, 476 Pa. 138, 381 A.2d 1263 (1977); *In re Adoption of Baby Girl Fleming*, 471 Pa. 73, 369 A.2d 1200 (1977); *In re Howard*, 468 Pa. 71, 360 A.2d 184 (1976); *In re Adoption of McAhren*, 460 Pa. 63, 331 A.2d 419 (1975); *In re Adoption of McCray*, 460 Pa. 210, 331 A.2d 652 (1975). Our scope of review is limited to determining whether the Orphans' Court's terminations of appellants' parental rights are supported by competent evidence. *In the Matter of the*

1. Our jurisdiction in this case is based on the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, § 202(3), 17 P.S. § 211.202(3) (Supp.1977–78).

2. The court relied on *In re Adoption of Orwick*, 464 Pa. 549, 347 A.2d 677 (1976) which only involved subsection (1). Additionally, the court made no finding on whether the problem "cannot or will not be remedied by the parent" pursuant to subsection (2).

*Adoption of David C.*, 479 Pa. 1, 387 A.2d 804 (1978); *In re William L., Frank L., and Mark L.*, 477 Pa. 322, 383 A.2d 1228 (1978); *In re Involuntary Termination of Parental Rights of S.C.B. and K.T.*, 474 Pa. 615, 379 A.2d 535 (1977); *In re Adoption of M.T.T.*, 467 Pa. 88, 354 A.2d 564 (1967).

The history underlying this appeal is that in 1973, after complaint, the Child Welfare Service of Greene County began working with the family by offering day care services to them. Having found the conditions of the home and the family "deplorable" and determining after thirteen months that there was no sustained improvement, the Service petitioned the court for foster home placement on May 3, 1974. Two of the five children were subsequently placed in the custody of the Child Welfare Service for placement. After working with the parents and believing they were ready to accept their role, the Service returned the two children. However, within a month the complaints started again and on January 20, 1975 all five children were placed in foster care.

Section 311(1) [3] consists of two grounds in the disjunctive so that the establishment of either ground would support a termination. *In the Matter of the Adoption of David C., supra; Matter of S., supra* (Opinion in Support of Reversal); *In re Adoption of M.T.T., supra.* With regard to the first ground, requiring that the parents, by conduct continuing for at least six months, evidence a settled purpose of relinquishing parental claim to a child, this Court has stated:

"The term 'settled purpose' implies a finality of purpose. *Wolfe Adoption Case*, 454 Pa. 550, 312 A.2d 793 (1973). In our efforts to determine if such a purpose was present, this Court has required an 'affirmative indication of a positive intent' to sever the parental relationship before

**3.** "The rights of a parent in regard to a child may be terminated after a petition filed pursuant to Sec. 312, and a hearing held pursuant to Sec. 313, on the ground that: (1) The parent by conduct continuing for a period of at least six months either . . .

has evidenced a settled purpose of relinquishing parental claim to a child,

or

has refused or failed to perform parental duties; . . . ."

we have upheld an involuntary termination. *In re Adoption of McAhren*, 460 Pa. 63, 70, 331 A.2d 419, 423 (1975); *Wolfe, supra.*" *In re Adoption of Baby Girl Fleming, supra*, 471 Pa. at 76, 369 A.2d at 1202.

We have also held that "even inaction or lack of interest in a child for a period in excess of six months will not conclusively establish the required settled purpose of relinquishment." *In re Adoption of Farabelli*, 460 Pa. 423, 430, 333 A.2d 846, 850 (1975).

The lower court in the instant case recited in its opinion the fact that "both parents are limited by their own educational and environmental background, so much so that they are themselves struggling against considerable odds." The court noted, "On several occasions after the children were placed in custody [the parents] were separated, each having gone to live with another mate, and the programs for attendance at parent education courses, mental health therapy and job training assistance arranged for by the Child Welfare Service were not carried out." "[T]he father never obtained steady work [and] could not . . . pay support for the children. . . ." The court further noted that after each visit with the parents, the children became uncontrollable. The court concluded from these facts that the parents "abandoned" the children. In light of the requirement that there be an affirmative indication of a positive intent to sever the parental relationship, it is clear this evidence does not support the conclusion of abandonment.

The fact of the parents' educational deficiencies and the fact that they were separated bear no relevance with regard to their intent to relinquish their claim to their children. The finding that the parents failed to carry out the programs available to them may be remotely reflective of an intent to abandon the children, but this fact alone is not enough on which to make such a conclusion.

On the contrary, there was substantial probative evidence to support a finding that there was no positive intent to abandon the children. The record reveals and the court below accepted as a fact that since the children have been in

foster care, both parents together have made regular month-ly visits with the children and have maintained contact with the Service.[4] The parents have frequently brought the children gifts and on one occasion had a birthday party for one of the children. We can only conclude that the record fails to support the finding that the parents " 'affirma-tive[ly] indicat[ed] . . . a positive intent' to sever the parental relationship." *In re Adoption of Baby Girl Fleming, supra,* 471 Pa. at 76, 369 A.2d 1202.

Turning to the second ground for termination under Sec-tion 311(1), the parents must have refused or failed to perform parental duties for a period of six months. This Court has commented extensively on this standard as fol-lows:

"Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive and uninvolved interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. *In re Adoption of Orwick,* 464 Pa. 549, 347 A.2d 677 (1976); *In re Adoption of McCray,* 460 Pa. 210, 331 A.2d 652 (1975); *Appeal of Diane B.,* 456 Pa. 429, 321 A.2d 618 (1974); *In re Smith's Adoption,* 412 Pa. 501, 194 A.2d 919 (1963). This affirmative duty en-compasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child. *In re Adoption of McCray, supra; Appeal of Diane B., supra; In re Adoption of Jagodzinski,* 444 Pa. 511, 281 A.2d 868 (1971). Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.' *Appeal of Diane B., supra,* 456 Pa. at 433, 321 A.2d at 620, quoting *In Re: Adoption of J.R.F.,* 27 Somer-set L.J. 298, 304–05 (Pa.C.P.1972)."

---

**4.** A caseworker testified that she believed that the parents would have been willing to make more visits if the Service had permitted them to do so.

*In the Matter of the Adoption of David C., supra,* 479 Pa. at 8, 387 A.2d at 807, quoting *In re Involuntary Termination of Parental Rights of S.C.B. and K.T., supra,* 474 Pa. at 624, 379 A.2d at 540.

With regard to the children's physical needs, there is a complete lack of evidence in the record indicating physical abuse or deprivation. A caseworker, Mrs. Miller, described the housekeeping as extremely poor, but testified that the children did not appear undernourished and the children wore clean clothes. The parents moved twice in an attempt to find better housing to satisfy the Child Welfare Service. They always managed to pay their rent when living in housing other than the father's parents' house. While it is true that the father was unable to obtain steady work, there was evidence that he did hold periodic jobs, including driving a truck for a wrecking company from 6:00 a. m. to midnight for ten dollars a day. The father testified that he had to quit the job he held before the wrecking company job because a caseworker told him to stay home in order to take care of the house and children with his wife. He also stated that he goes down to the unemployment office in Greene County monthly seeking employment. All of these facts are uncontradicted in the record. We have never permitted an involuntary termination under Section 311(1) based on lack of support where the parent " 'utilized those resources at his or her command.' " *In re Adoption of P.,* 475 Pa. 197, 206, 380 A.2d 311, 315 (1977) quoting *Adoption of McCray,* 460 Pa. 210, 217, 331 A.2d 652, 655 (1975). See also, *In re Involuntary Termination of Parental Rights of S.C.B. and K.T., supra,* 474 Pa. at 624, 379 A.2d at 540.

Concerning the children's emotional needs, we have never held that the mere existence of a marital dispute in the home is sufficient to support an involuntary termination, despite the fact it may adversely affect the emotional states of the children. Where the unsettling effect is offset by the fact that the parents have continuously demonstrated their love, affection and concern to their children, we cannot conclude that the parents have failed to meet their children's emotional needs.

In view of the foregoing, it is apparent that the record does not reflect such a refusal or failure to perform parental duties as would justify the involuntary termination of parental rights. Conceding the limited financial and environmental resources available to this family, it nevertheless is to be noted that the parents utilized those resources available for the benefit of their children.

MANDERINO, J., joins in this opinion.