J-A10028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.D.H., | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | Appellant | |
| | v. | |
| B.R. (L.), | | |
| | Appellee | No. 1317 WDA 2015 |

Appeal from the Order Entered July 27, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD-09-2343

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 1, 2016**

Appellant, S.D.H. (Father), appeals from the July 27, 2015 order granting the petition to involuntary terminate his parental rights to his minor male child, R.L.H. (Child) (born in November of 2008), filed by B.R. (L.) (Mother), pursuant to section 2511(a)(1) and (b) of the Adoption Act. 23 Pa.C.S. § 2511(a)(1) and (b).  We affirm.

The relevant facts and procedural history of this case were summarized by the trial court as follows:

> The parties are unmarried parents of [Child]….  The parties lived together on and off between 2005 and 2008.  Father has had substance abuse problems since he was fourteen.  When Mother became pregnant, Father decided to seek treatment for his drug and alcohol addiction.  His efforts were unsuccessful and Mother terminated their relationship in October of 2009.  Father harassed Mother after their separation, causing her to file a Petition for Protection from Abuse (PFA).  On December 23, 2009, a PFA Order was entered barring Father from having any contact with Mother for two years.  Father was granted two

supervised visits with [Child] each month. The visits were to be arranged by Father through either Mother's stepfather or uncle, provided that Father provided documentation that he was drug free. Father was represented by counsel at the time and consented to the terms. Father violated the terms of the order within a few months and was jailed. The PFA was extended three years by Order dated March 31, 2010.

Mother filed a Complaint for Support on April 29, 2009 and a child support order was entered. After numerous unsuccessful efforts to collect child support from Father, including two incarcerations for non-payment, the [c]ourt found that Father was not capable of working due to his drug addiction and dismissed the support action. The only child support Mother ever received was a lump sum payment of $650 that Father's parents made to get him out of jail. Father never exercised his rights to supervised visitation. Father has not seen or communicated with [Child] since his first birthday.

When [Child] was eighteen months old, he was diagnosed with MECP2 Duplication Syndrome, a rare genetic disorder that causes neurological problems, muscle spasticity and developmental delays. He is non-verbal and wheel chair bound. Mother began dating William J. Lutz (Lutz) when [Child] was two. They married on October 20, 2012. They have one child, [B.L.], born [in] November [ ] 2013. Lutz is employed as a machinist for FPD Company. He works evenings and Mother works weekends so that one or the other is always available to care for the two children. At the time of the hearing, [Child] was six years old and attending kindergarten at the School for the Blind.

Father was in and out of rehabilitation facilities between 2008 and 2013. He claims a clean date of April 15, 2013. At the time of the hearing, he was gainfully employed and attending Community College of Allegheny County.

On May 13, 2014, Father filed a Complaint for Custody with the assistance of the Family Division self-help center and was given a date to return for a court appearance. Father moved to Virginia Beach and failed to appear on the scheduled date, claiming car trouble. He appeared on July 28, 2014 to reschedule. An educational seminar was set for August 23, 2014 and a mediation session on September 15, 2014. Father failed to appear for the educational seminar, claiming he thought that

was only for Mother and [Child]. When he appeared for the mediation, he learned that his custody action had been dismissed based on his failure to appear for the educational seminar. Father initiated a second custody action on October 2, 2014. Father appeared at the educational seminar on October 18, 2014 and the custody conciliation on January 6, 2015. No agreement was reached and a custody hearing was scheduled for April 1, 2015.

On November 19, 2014, Mother filed a Petition for the Involuntary Termination of the Parental Rights of [Father] (Petition) in the Court of Common Pleas Orphans' Court Division at case number A-130 of 2014. The Petition was filed under section 2511(a) (1) of the Adoption Act in conjunction with a Petition for Adoption filed by Lutz. By Order dated January 9, 2015, the case was transferred to Family Division due to Father's pending custody action. Mother re-filed her Petition in Family Division and a hearing was scheduled for July 1, 2015. The Court appointed Margaret Gold, Esq. (Gold) guardian ad litem for [Child], and Deborah Lesko, Esq. as counsel for Father. Gold issued a report on June 18, 2015 recommending that Father's parental rights be terminated and that the Petition to Adopt [Child] filed by Lutz be granted.

A hearing was held on July 1, 2015[,] at which time[,] Mother, Gold, Lutz and Father testified. The [c]ourt issued an Order dated August 3, 2015 finding that Mother had established a legal basis for termination of the parental rights of Father under 23 Pa.C.S.A. § 2511(a) (1).

Trial Court Opinion (TCO), 10/8/15, at 2-4.

On August 25, 2015, Father filed a timely notice of appeal. He now raises the following issues for our review:

I.    Did the lower court abuse its discretion and commit an error of law when it held that [Mother] has established a legal basis for termination of parental rights of Father to Child?

II.   Did the lower court abuse its discretion when it determined that the developmental, physical and emotional needs and welfare of Child were best served by terminating the parental rights of Father?

Father's Brief at 2-3.

We review an appeal from the termination of parental rights with the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 575 Pa. 647, [654-655,] 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 539 Pa. 161, [165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

In termination cases, the burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re S.H.*, 879 A.2d 802, 806 (Pa. Super. 2005). We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003) (internal quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interest of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511; other citations omitted). This Court must agree with only one subsection of 2511(a), in addition to section 2511(b), in order to affirm the termination of

parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In this case, the trial court concluded that Mother provided clear and convincing evidence that Father's parental rights should be terminated pursuant to sections 2511(a)(1) and (b). Those provisions provide as follows:

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> \*\*\*
>
> **(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

As we addressed the application of section 2511(a)(1) in *In re C.M.S.*, 832 A.2d 457, 461 (Pa. Super. 2003), we noted:

> To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition,

which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.

*Id.* (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)). In *C.M.S.*, we further acknowledged the following statement by our Supreme Court:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life[.']

*C.M.S.*, 832 A.2d at 462 (quoting *In re Burns*, 379 A.2d 535, 540 (Pa. 1977)).

Here, in support of its finding that Father failed to perform his parental duties, which established grounds for termination under 23 Pa.C.S. § 2511(a)(1), the trial court stated the following:

> For five years, Father manifested no interest in [Child] and no concern for his well-being, removing himself completely from the parent-child relationship. He did not exercise his rights to visitation while the PFA Order was in effect. He did not request visitation after the PFA Order expired. He did not pay child support when he was under a court ordered obligation to do so. Father was clean, working two jobs and attending community college for over a year before he filed for partial custody. During that year, he made no effort to visit with [Child] or support him financially. The mere filing of a custody complaint within the six-

- 7 -

month period preceding the Petition is hardly sufficient to preserve Father's claim to [Child] after a five-year period of total abandonment. The [c]ourt found that Mother established by clear, convincing and undisputed evidence that Father demonstrated both a settled purpose to relinquish his parental rights and a refusal to perform his parental duties.

TCO at 5-6.

Moreover, the record belies Father's assertion that the lower court failed to look at the totality of circumstances and to consider the obstacles that prevented him from maintaining a relationship with Child. Father's Brief at 9-10. The court thoroughly addressed this issue in its opinion as follows:

Father blames his absence on the PFA; fear that Mother would file another PFA, lack of support from facilitators of his supervised visitation and substance abuse. Father claims to have tried once or twice to arrange visitation while the PFA was in effect, but the supervisors made it difficult and he did not follow up. He never called or contacted [Child] or Mother after the PFA expired for fear that she would file another PFA. The one time he claims to have called Mother, she told him to get in touch with her when he got a job. Father did not call when he got a job. Father did not call when he quit using drugs. Father did not use any of the available resources to preserve the relationship until he filed for custody in 2014. Father's explanation was that he needed to focus on his own mental, physical and emotional health for the past five years and could not be a parent. Father says now he is ready.

TCO at 6.

As previously acknowledged by this Court:

Parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities. **In re Smith's Adoption**, 412 Pa. 501, 194 A.2d 919 (1963). Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances.

- 8 -

*In re Adoption of Dale A., II*, 683 A.2d 297, 302 (Pa. Super. 1996) (quoting *In re Adoption of Sabrina*, 472 A.2d 624, 629 (Pa. Super. 1984)).  The record clearly reflects that Father made no attempts to form a relationship with Child.  Accordingly, we conclude that the trial court's determinations regarding section 2511(a)(1) are supported by sufficient, competent evidence in the record.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b) are satisfied.  *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*).  This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b).  *Id.* at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S. § 2511(b).  The emotional needs and welfare of the child have been properly interpreted to include "intangibles such as love, comfort, security, and stability."  *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012).  In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1992)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child.  The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.  *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Father argues that the lower court failed to "consider the impact that severing the parental tie to Father may have on Child." Father's Brief at 11. To the contrary, we note that after providing the foregoing summary of Father's lack of effort to preserve a relationship with Child, the court expressly concluded: "Since there has been no contact between Father and [Child] since his first birthday, [Child] will be unaffected by the termination of Father's rights." TCO at 6.

In further support of its conclusion that termination of Father's parental rights is in the best interest of Child, the court stated the following:

> The [c]ourt gave primary consideration to the developmental, physical and emotional needs and welfare of [Child]. [Child] has been parented by Lutz since he was two years old. He is doing well in a loving household with Mother, Lutz and a baby brother. Lutz is fully committed to [Child] and performs all the attendant duties of a Father. He goes to school functions and participates in school activities. He is aware that [Child] may never be capable of independent living. [Lutz] is fully prepared to take on all the obligations of parenthood for the rest of [Child's] life. The guardian *ad litem* witnessed the bond between Lutz and [Child]. It is unquestionably in the best interest of [Child] physically, emotionally and mentally to be adopted by Lutz.

TCO at 6-7.

As there is competent evidence in the record that supports the lower court's credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Father, we conclude that the court did not abuse its discretion as to section 2511(b). *See S.P.*, 47 A.3d at 826-27. Accordingly, we affirm the order terminating Father's parental rights to Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  6/1/2016