**In re Adoption of D. J. L., Jr. and D. W. L.**

*Samuel C. Ranck,* for petitioner.
*Lillian Raycroft,* for natural father, contra.

KIVKO, P. J., February 8, 1974.—The stepfather of D.J.L. and D.W.L., nine and seven years of age, respectively, filed a petition for their adoption. His wife, the mother of the children, joined in the petition. Petitioners seek to dispense with the necessity of the father's consent on the alleged ground that, by conduct continuing for a period of more than six months, he has evidenced a settled purpose of relinquishing parental claim to the children or has refused or failed to perform parental duties. The father, former husband of the mother and respondent in this matter, denies the allegation and opposes the petition.

The issue before us is whether the father's parental rights have been lost. After hearing held and due consideration of the testimony taken, we make the following

### FINDINGS OF FACT

The parents separated in May 1968. The mother took custody of the children, then three and one years of age. They've remained in her custody since. The parents were divorced on December 12, 1968. She married petitioner-stepfather two weeks later.

Respondent visited with the children almost every Sunday afternoon from the time of the separation until October 1970. On occasions, the mother refused him such visitation when he was in default on the support order of $20 a week entered in September, 1968. He was advised by his attorney that his right of visitation

did not depend on whether he was free from such default. On Sunday night, October 6, 1970, he called for the children while they were eating supper. He was asked to wait. After the meal, the mother told him that the boys did not want to go with him and, although she was willing to let them go, she would not force them to do it.

He never saw, or attempted to see, the children afterward until the date of the hearing on September 24, 1973. After October 6, 1970, he paid no support for the children, sent no birthday or Christmas gifts or cards, and, although he has lived within 40 miles of them, he made no attempt to communicate with them in any way.

On October 23, 1970, or two and one-half weeks after his last visit at the home of the children, he remarried. For some time after the marriage, he and his wife lived at the home of her parents rent free. His take home pay is $175 every two weeks. His wife is also working.

## DISCUSSION

The relevant provisions of the Adoption Act of July 24, 1970, P. L. 620, 1 PS §101, et seq., are as follows:

"Except as otherwise provided in this act, consent to an adoption shall be required of . . . (3) The parents or surviving parent of an adoptee": Section 411.

"Consent of a parent to adoption shall not be required if a decree of termination with regard to such parent has been entered. When parental rights have not previously been terminated, the court may find that consent of parent of the adoptee is not required if, after hearing as prescribed in section 313, the court finds that grounds exist for involuntary termination under section 311": Section 414.

"The rights of a parent in regard to a child may be terminated after . . . a hearing . . . on the ground that: (1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties": Section 311.

The hearing under section 414 of the act was held as part of the hearing on the petition for adoption.

The act under section 311(1) provides three grounds on which the termination of a parent's right to a child may be predicated. We need to consider only two: the refusal of a parent to perform parental duties and the failure of a parent to perform such duties.

The parental obligation is a positive duty and requires performance which may not be delayed beyond the statutory period by the parent if the parental right is not to be forfeited: Smith Adoption Case, 412 Pa. 501 (1963); Jagodzinski Adoption Case, 444 Pa. 511 (1971).

What proper parental duties are might vary considerably and must be determined by the circumstances of each case.

Respondent has been under a court order since September, 1968, to pay $20 a week for the support of his children. The mother never released him from that obligation. On the contrary, prior to the time her attorney advised her that she had no right to do so, she at times attempted to enforce this obligation by refusing him visitation with the children when he was in default. The duty of a father to support his children is "well nigh absolute." Ordinarily, a support order must be paid regardless of whether his wife is wrongfully denying the father's right of visitation: Commonwealth ex rel., Mickey v. Mickey, 220 Pa. Superior Ct.

39, 42 (1971). For almost three years, respondent, without any claim that he was unable to do so, has not paid anything toward the support of those children.

Parental duties embrace more than the obligation to provide support. They also include a desire to see the children, to communicate with them, to be concerned about their welfare and to evidence that concern: Owen Adoption, 51 D. & C. 2d 761 (Mercer County, (1971)). For almost three years, respondent has done nothing to discharge or recognize any of these obligations.

After the children indicated that they did not want to go out with him on the evening of October 6, 1970, he made no attempt on any subsequent occasion to ascertain whether this was a fixed and final determination on their part or whether it was merely a reluctance to leave home this particular evening induced by the lateness of the hour or by some other of the many unpredictable whims by which children, then five and four years of age, may momentarily be swayed. Respondent made no attempt to seek legal advice as to whether he could enforce his right of visitation regardless of whether the children consented to it.

Birthday and Christmas are traditional occasions for remembrance and expression of love, care and concern from loved ones and friends. These are holidays of special significance in the lives of children. Respondent permitted three birthdays for each of the children and three Christmases to go by without any expression that would indicate he was aware of their existence. In fact, since October 6, 1970, he made no attempt to communicate with them at all.

He attempts to explain his abstention and silence by stating that he "supposed" and "assumed" that, if he had sent the children any gift or card, these would

not have been given to them. There is no factual basis in the testimony to support such assumptions. Petitioners, on the other hand, contend that respondent's remarriage and his last visit to see the children in the same month were not mere coincidence and that with the remarriage, respondent decided to avoid all reminders and sever all ties and responsibilities of his first marriage. The evidence supports this as the more plausible explanation and fails to provide an adequate justification for his conduct.

Respondent does not question petitioners meeting all of the other conditions and requirements of the Adoption Act. We find that they have been met.

We enter the following

### CONCLUSIONS OF LAW

1. Respondent by conduct continuing for a period of at least six months has refused to perform parental duties to his children, D.J.L., Jr., and D.W.L.

2. Respondent by conduct continuing for a period of at least six months has failed to perform parental duties to his said children.

3. Grounds exist for the involuntary termination of the parental rights of respondent to said children.

4. Respondent's consent to the adoption of said children is not required.

5. The statements in the petition for the adoption of said children by their stepfather are true.

6. The requirements of the Adoption Act for said adoption have been met.

7. The welfare of the children will be promoted by such adoption.

We, therefore, enter the following

### DECREE

And now, February 8, 1974, in view of the foregoing findings of fact and conclusions of law, it is decreed

that the prayer of the petition for the adoption of D.J.L., Jr., and D.W.L. by their stepfather be allowed. Upon presentation, an appropriate formal decree of adoption for each of said children shall be signed by the court.