**In re Adoption of M.P.B. III**

*Gene G. Dimeo,* for petitioner.
*Monica May DeRosa,* pro se.

HODGE, *J.,* February 14, 2008—This case is before the court for a hearing on a petition for involuntary termination of parental rights, filed by the natural father, Michael P. Birckbichler II.

Both parents testified at the hearing, and the following facts were established:

274

The parties were married on June 12, 1999, and the minor child, M.P.B. III, was born on June 24, 1999. A divorce complaint was filed on October 4, 1999, and the parties were divorced by decree dated March 22, 2000, at case number 11076 of 1999, C.A.

Included in the divorce action, was a cause of action for custody of the minor child, with the father having primary physical custody of the child since entry of an order of January 26, 2001.

On September 24, 2002, this court entered a temporary protection from abuse order on behalf of the minor child and against the mother, with the court granting the mother supervised visits at Kids In Common pending final hearing. A court hearing was held on October 4, 2002, and the temporary protection from abuse order was dismissed by order of Judge Piccione dated January 8, 2003.

The most recent custody order was dated October 2, 2006, at which time the mother was granted weekly, supervised visits with the minor child, at Kids In Common. However, this court was advised by Mr. Brian Dick of Kids In Common, pursuant to letter of January 21, 2007, that on October 4, 2006, the program had received a phone call from the mother requesting establishment of services, but when Mr. Dick attempted to explain the preliminary orientation, fees for services, etc., the mother became angered and terminated the phone call, and Kids In Common has not heard from her since.

Both parents agree that the last physical contact by and between the natural mother and the minor child was on Christmas Day 2004. Since that time, the mother, by

her own testimony, acknowledges that she has not seen the child.

The mother was incarcerated in the Lawrence County Jail for two periods of time, being from December 2005 through June 2006, on a probation violation, and from February 2007 through November 2007, on a sentence to a charge of conspiracy to robbery. The mother's testimony was that she sent cards and letters to her son while incarcerated, but that she believes the father refused to give any of the cards or letters to her son.

The petition for involuntary termination of parental rights was filed November 1, 2007, pursuant to 23 Pa.C.S. §2511(a)(1). The six-month look-back period then, would run from May 1, 2007, through November 1, 2007, during which period of time the mother was incarcerated in the Lawrence County Jail.

The statutory authority for termination of parental rights is set forth at 23 Pa.C.S. §2511, "grounds for involuntary termination; (a) general rule (1)," which provides that a parent's rights to his or her child may be terminated where:

"The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties."

Other statutory authority of importance is set forth at 23 Pa.C.S. §2511(b), "other considerations," which provides as follows:

"The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the base of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."

The case law makes clear that under section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only after determining that the parent's conduct warrants termination of his or her parental rights must the court engage in the second part of the analysis: determination of the needs and welfare of the child under the standard of best interest of the child. Though the needs and welfare analysis is mandated by the statute, it is distinct from, and not relevant to, a determination whether the parent's conduct justifies termination of parental rights under the statute. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child. See *In re Adoption of R.J.S.,* 901 A.2d 502 (Pa. Super. 2006).

In proceedings to involuntarily terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. *In re G.P.-R.,* 851 A.2d 967 (Pa. Super. 2004). In such a proceeding, the focus is on the conduct of the parent. *In re B.L.W.,* 843 A.2d 380 (Pa. Super. 2004).

The court must first consider whether the statutory criterion for termination was met pursuant to section 2511(a)(1). In this case, the six-month statutory period under section 2511(a)(1) spans from May 1, 2007, through November 1, 2007.

The uncontradicted evidence is that the mother has not seen her son since December 25, 2004, and has never paid child support for the benefit of the child. The mother's own testimony provides clear and convincing evidence that she failed to perform parental duties for this entire statutory period. In fact, the evidence as set forth above makes clear that the mother's many failures far preceded the statutory period.

While incarceration of a parent does not, in itself, provide grounds for the termination of parental rights, a parent's responsibilities are not tolled during his or her incarceration. *In re Adoption of McCray,* 460 Pa. 210, 331 A.2d 652 (1975). Moreover, parental rights may not be preserved by waiting for some more suitable financial circumstance or convenient time for the performance of parental duties and responsibilities. See *Smith Adoption Case,* 412 Pa. 501, 194 A.2d 919 (1963).

In the case of *In re D.J.S.,* 737 A.2d 283 (Pa. Super. 1999), the Superior Court considered a situation in which

an incarcerated father had sent an occasional card or gift to his child, but had no direct phone contact with the child and had shown no interest in supporting the child financially until after the termination of parental rights petition was filed. In that case, the Superior Court held that letters, some child support, and gifts that the incarcerated father sent to his child did not indicate a serious intent to re-establish a parent-child relationship and a willingness and capacity to undertake a parental role; thus, the father's parenting effort after the county petitioned to terminate parental rights did not preclude termination.

In this case, the mother was incarcerated for, at most, a 16-month out of 34-month period from the time she last saw her son until the filing of the petition for involuntary termination. More than half the time the mother was not incarcerated, and, during that period of time, failed to show any efforts whatsoever in order to act as a parent toward her son. Thus, the court concludes that there is clear and convincing evidence to support the termination of Mother's parental rights pursuant to section 2511(a)(1).

The second part of our analysis relates to the determination of the needs and welfare of the child under the standard of best interest of the child. A major aspect of that analysis is the nature and status of the emotional bond between the parent and child. The significant evidence in this comes from the mother's own testimony, that her son probably does not even recognize her now. In addition, the father presented letters written by the mother to his mother, indicating that she appreciates what the father and paternal grandmother

are doing to raise her son and she knows that she (parental grandmother) will do what is right concerning the child. See petitioner's exhibit no. 1, no. 5, no. 6 and petitioner's exhibit no. 7. The common theme in all of these is gratitude for the father raising the child in an appropriate manner. In addition, to be fair to the mother, the mother also indicates a hope in her life that she will be able to have an appropriate relationship with her child, once she is able to resolve her own addiction issues. The mother testified at the hearing that she has been clean and sober for a period of one year, from February 2007 to the present date. However, the court must take that testimony into consideration of the fact that she had been incarcerated from sometime in February 2007 through November 2007, or a period of approximately nine to 10 months out of this past year. With that being the case, her testimony about being free from drugs and alcohol must be considered to have only approximately three months of clean time while she has been "on the streets."

There is no question in this case that the mother's drug addiction caused her to neglect her child for a substantial and formative period of his life. As a result, the child has no bond with the mother, and, in fact, has no relationship with her at all.

In addition, because the child has had no contact with the mother from age 5 through 8 1/2, the effect of termination of parental rights will be positive and beneficial to the minor child.

Accordingly, the court will enter the attached order:

## ORDER

And now, February 14, 2008, this case being before the court for a hearing on February 13, 2008, on a petition for involuntary termination of parental rights of the natural mother, Monica May DeRosa, with the petitioner/father, Michael Paul Birckbichler II, appearing with his attorney, Gene Dimeo, Esquire; and the natural mother, Monica May DeRosa, appearing pro se, and following hearing held and testimony received, the court enters the following order:

(1) The court finds the testimony of the petitioner, Michael Paul Birckbichler II, to be credible, and sufficient to establish by clear and convincing evidence, the grounds for involuntary termination of parental rights pursuant to 23 Pa.C.S. §2511(a)(1).

(2) The petition for involuntary termination of parental rights of the natural mother, Monica May DeRosa, is hereby granted, and the parental rights of the natural mother, Monica May DeRosa, are hereby terminated. For cause shown by clear and convincing evidence, the court exercises its discretion pursuant to section 2901 of the Pennsylvania Adoption Act, and finds it to be in the best interest of the minor child to proceed with a decree of adoption without termination of the natural father's parental rights which shall remain intact. See *In re Adoption of R.B.F. and R.C.F.,* 569 Pa. 269, 803 A.2d 1195 (2002).

(3) In arriving at this decision, this court has considered the statutory authority for involuntary termination of parental rights, 23 Pa.C.S. §2511; the appellant authority cited in the opinion attached hereto, and in addition,

but not limited to, *Adoption of Charles E.D.M. II,* 550 Pa. 595, 708 A.2d 88 (1998); *In re D.J.S.,* 737 A.2d 283 (Pa. Super. 1999).

(4) Custody of M.P.B. III is hereby awarded to petitioner, Michael P. Birckbichler II and Diane E. Birckbichler, pending further order of court and the adoption proceedings.

(5) The respondent, Monica May DeRosa, shall have no right to object to or receive notice of adoption proceedings with respect to the above minor child.

(6) Pursuant to this order and made a part hereof is the statutory notice to natural parents relative to the right to place personal information on file with the court and the Department of Health, which shall be served on the natural parent, together with a certified copy of this order of court.

(7) The prothonotary shall properly serve notice of this order by regular mail or personal service upon counsel of record, and upon the respondent, Monica May DeRosa, at 107 East Sharp Street, New Castle, Pennsylvania, 16101.

## NOTICE TO NATURAL PARENT(S)

Following a court hearing, your parental rights to your child have been terminated. You have the right to place personal information on file with the court and with the Department of Health.

This information may not be disclosed to anyone. However, you may give the court and the Department of Health any other information placed on file about the

natural parent(s). This information may only be given to: (1) the child if 18 years old or older; or, (2) the child's adoptive parents or legal guardians if the child is under 18 years of age. The child may see these records if you give permission by filing a consent form with the court and the Department of Health. If both parents sign consent forms, the child can receive the information on the birth certificate. If only one parent signs a consent form, only the identity of that parent may be given to the child.

You may update the records to show your current address or other information about yourself.

You may withdraw your permission for the child to see these records at any time by filing a withdrawal of consent form with the court and the Department of Health.