J-S28017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.G.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: T.M.R., MOTHER | : | |
| | : | |
| | : | No. 563 MDA 2025 |

Appeal from the Decree Entered April 4, 2025
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s):  2021-2199

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:　　　　**FILED: NOVEMBER 5, 2025**

　　　T.M.R. ("Mother") appeals from the April 4, 2025 decree which granted the petition filed by A.R. ("Father") and C.R. ("Stepmother") (collectively "Appellees") and involuntarily terminated Mother's parental rights to her biological daughter, A.G.R. ("Child"), born in January 2014.  After careful review, we affirm.

　　　We gather the relevant factual and procedural history of this matter from the certified record.  Since it is relevant to our disposition, we note that Mother is deaf and utilizes American Sign Language ("ASL") to communicate.  Mother and Father began their relationship in 2000.  Child is the youngest of

the three children they have together.[1]  Mother and Father ended their relationship in July 2019.  Following their separation, Mother absconded with Child for two weeks.  **See** N.T., 8/5/24[2], at 185, 360.  In August 2019, however, Mother kicked Child, then five years old, out of her home.  **See id.** at 187, 200.  Thereafter, Father informally exercised primary physical custody of Child.  Pursuant to this informal custodial schedule, Mother had partial physical custody of Child approximately two nights per week, including some overnights, until February 2020.

On February 24, 2020, Father filed a protection from abuse ("PFA") petition against Mother on his own behalf.[3]  **See** GAL Exhibit 1 at 3-4 (unpaginated).  In his petition, Father alleged that Mother repeatedly threatened to kill him with the firearm she regularly carried.  **See id.** at 4 (unpaginated).  On the same date, the court entered a temporary PFA order which prohibited Mother from harassing or threatening Father and protected

_____

[1] Mother and Father's oldest child, A.R., was over 18 years old at the time of the filing of the subject petition.  Although Appellees filed a simultaneous petition with respect to Mother and Father's middle child, A.T.R., born in March 2008, they ultimately withdrew the petition pursuant to a voluntary agreement with Mother.  **See** N.T., 2/12/25, at 3-13.  Neither of Child's siblings are directly implicated in this appeal.

[2] The notes of testimony from August 5 and August 7, 2024 have continuous pagination.  As such, we will only refer to August 5, 2024 for consistency.

[3] Father's petition was also filed on behalf of Child and A.T.R.  **See** Guardian *ad litem* ("GAL") Exhibit 1 at 3-4 (unpaginated).  The court did not grant the petition as to the children.  **See id.** at 1-2 (unpaginated).

his residence. ***See id.*** at 1-2 (unpaginated). The order also awarded Father temporary legal and physical custody of Child, subject to Mother's partial physical custody, which was to be at the parties' discretion. ***Id.*** at 2 (unpaginated). The order provided that Mother was to contact the listed intermediaries, V.P. ("Paternal Grandmother") or M.R. ("Paternal Aunt"), to arrange custody. ***See id.***

Also on February 24, 2020, Mother filed a *pro se* custody complaint with respect to Child. ***See*** Mother's Exhibit 10. A video conciliation conference was held on June 15, 2020, which Mother failed to attend. ***See*** GAL Exhibit 2. On June 25, 2020, the court entered an order which awarded Father sole legal custody of Child and maintained the physical custody awards from the temporary PFA order. ***See id.***

During the pendency of the temporary PFA order, Mother was charged three separate times with indirect criminal contempt ("ICC"), after making threats to Father. ***See*** GAL Exhibit 17. A final PFA hearing occurred on September 2, 2020, during which Mother and Father were present and represented by counsel. ***See*** GAL Exhibit 22. By agreement of the parties, the court entered a one-year final PFA order that maintained the custodial provisions of the temporary PFA order. ***See id.*** In addition, the final PFA order allowed Mother to have contact with Father *via* email to arrange custody, as long as the communication was not threatening or harassing. ***See id.***

Despite the multiple aforementioned orders awarding Mother custodial time, the last contact Mother had with Child was in February 2020. **See** N.T., 8/5/24, at 404-05; N.T., 10/18/24, at 64-65, 69-70, 95-96. Mother never attempted to contact Paternal Grandmother during the pendency of the temporary and final PFA orders. **See** N.T., 10/18/24, at 118. Mother only contacted Paternal Aunt one time in April 2020. **See id.** at 66, 117; N.T., 8/5/24, at 369. Mother never contacted Father to arrange custodial time, although the final PFA order allowed such contact. **See** N.T., 8/5/24, at 130-32, 148. Mother never filed any petitions for enforcement of her custodial awards, such as modification or an appeal of the PFA and custody orders. **See id.** at 165-66, 371, 377-78, 380-81; N.T., 10/18/24, at 92.

On August 4, 2021, Appellees filed a petition to involuntarily terminate Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). Mother was served with the petition on October 4, 2021. **See** Affidavit of Service, 10/4/21. Following a protracted hearing that commenced on March 5, 2022, the court entered a decree terminating Mother's parental rights to Child.[4] **See** Orphans' Court Opinion, 7/7/25, at 1. Thereafter, Mother appealed the termination decree to this Court, which was docketed at 1223 MDA 2023. **See id.**

---

[4] Mother's parental rights to A.T.R. were also terminated at this time. **See** Orphans' Court Opinion, 7/7/25, at 1.

On February 2, 2024, a panel of this Court reversed the decree and remanded the case to the orphans' court to make the appropriate finding regarding whether Child's best interests and legal interests conflicted and to hold a new evidentiary hearing during which Child's dual interests would be appropriately represented. ***See In re Adoption of A.G.R.***, 315 A.3d 51 (Pa. Super. 2024) (non-precedential decision) (*citing* 23 Pa.C.S.A. § 2313(a); ***In re Adoption of K.M.G.***, 240 A.3d 1218 (Pa. 2020); ***In the Interest of K.N.L.***, 284 A.3d 121, 151 (Pa. 2022)).

On remand, the orphans' court held the new evidentiary hearing on August 5 and 7, 2024, October 18, 2024, and February 12, 2025. Child's best interests were represented by her GAL, Catherine Roland, Esquire. Child's legal interests were represented by her legal interest counsel ("LIC"), Caprice Hicks Bunting, Esquire.[5] Ten-year-old Child testified *in camera*, with respect to when she last spoke to Mother and her desire to be adopted by Stepmother. ***See*** N.T., 8/5/24, at 57-82.

Mother, who was represented by counsel, testified on her own behalf with the aid of ASL interpreters. Appellees appeared *pro se* and separately

---

[5] Our Supreme Court has held that "appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with" 23 Pa.C.S.A. § 2313(a). ***K.M.G.***, 240 A.3d at 1235. Here, the court appointed Attorney Hicks Bunting to serve as Child's LIC. ***See*** Order, 4/12/24. As such, the court complied with the requirements of 23 Pa.C.S.A. § 2313(a).

testified on their own behalf. Appellees also presented the testimony of J.R., Father's niece. Appellees, Mother, the GAL, and the LIC collectively proffered 52 exhibits.

By order dated April 2, 2025, and entered April 4, 2025, the orphans' court involuntarily terminated Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). On May 1, 2025, Mother timely filed a notice of appeal and a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court filed its Rule 1925(a) opinion on July 7, 2025.

On appeal, Mother raises the following issues for our review:

1. Whether the orphans' court erred in finding that Appellees met their burden under 23 Pa.C.S.A. § 2511(a)(1) when Father placed obstacles in Mother's path to prevent contact with Child?

2. Whether the orphans' court erred in finding that termination of parental rights met the needs and welfare of Child under 23 Pa.C.S.A. § 2511(b)?

Mother's Brief at 4 (cleaned up).[6]

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an

---

[6] Child's GAL and LIC each filed separate briefs advocating for affirmance of the involuntary termination decree.

appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-830 (Pa. Super. 2022) (citations and quotation marks omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by clear and convincing evidence, the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and

welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A.

§ 2511(b).

Here, the orphans' court terminated Mother's parental rights pursuant

to Section 2511(a)(1) and (b), which provide, as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

>> . . .

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

With respect to parental duties in the context of Section 2511(a)(1), our

Supreme Court has explained:

> "Parental duties" are not defined in the Adoption Act, but our courts long have interpreted parental duties "in relation to the needs of a child[,]" such as "love, protection, guidance, and support." *In re Burns*, 379 A.2d 535, 540 (Pa. 1977). Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. [*In re Adoption of*] *C.M.*,

- 8 -

255 A.3d [343,] 364 [(Pa. 2021)]. The roster of such positive actions undoubtedly includes communication and association. *Id.* (citing *In re Adoption of Smith*, 194 A.2d 919, 920 (Pa. 1963)). The performance of parental duties "requires that a parent exert [herself] to take and maintain a place of importance in the child's life." *Id.* (internal citations omitted). Fortitude is required, as a parent must act with "reasonable firmness" to overcome obstacles that stand in the way of preserving a parent-child relationship and may not wait for a more suitable time to perform parental responsibilities. *Id.*

*In re Adoption of L.A.K.*, 265 A.3d 580, 592 (Pa. 2021).

The *L.A.K.* Court described the timeframe in which courts must evaluate

an absent parent's conduct, as follows:

Of importance is the General Assembly's emphasis in Section 2511(a)(1) on the six months immediately preceding the filing of the termination petition when evaluating the parent's conduct. Although courts are to avoid the mechanical application of the Adoption Act, we may not ignore that the General Assembly has drawn focus to the six months immediately preceding the filing of the petition. Indeed, quite recently [the Supreme] Court addressed this aspect of Section 2511(a)(1) and reaffirmed that for an analysis thereunder, the most critical period for evaluation is the six months immediately preceding the filing of the termination petition. *C.M.*, 255 A.3d at 367.

*Id.*

Further, our Supreme Court has stated the following considerations

regarding a Section 2511(a)(1) analysis:

When considering a request to terminate rights under Section 2511(a)(1), a parent's failure or refusal to perform parental duties must be analyzed in relation to the particular circumstances of the case. . . . Thus, the focus of the inquiry is on whether, under the circumstances, the parent has acted with reasonable firmness in refusing to yield to the obstacles that have prevented the performance of parental duties. *In re M.A.K.*, 414 A.2d 1052, 1054 (Pa. 1980); *see also C.M.*, 255 A.3d at 365 (providing that inquiry focuses on whether under the circumstances, the parent

- 9 -

has utilized all available resources to preserve the parent-child relationship).

*Id.* at 592-93 (some quotation marks and citations omitted).

The *L.A.K.* Court has instructed orphans' courts to "avoid a mechanical application" of Section 2511(a)(1), as follows:

[E]ven when the evidence clearly establishes a parent has failed to perform affirmative parental duties for a period in excess of six months as required by Section 2511(a)(1), the court "must examine the individual circumstances and any explanation offered by the parent to determine if that evidence, in light of the totality of circumstances, clearly warrants permitting the involuntary termination [of parental rights]." *In re Orwick's Adoption*, 347 A.2d 677, 680 (Pa. 1975). Consideration of the totality of the circumstances includes evaluation of the following: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between the parent and child, if any, including any efforts made by the parent to reestablish contact with the child; and (3) the effect that termination of parental rights would have on the child pursuant to Section 2511(b). *C.M.*, 255 A.3d at 365; [*Matter of Adoption of*] *Charles E.D.M.*, [*II*,] 708 A.2d [88,] 92 [(Pa. 1998)]; [*In re Adoption of*] *Atencio*, 650 A.2d [1064,] 1066-67 [(Pa. 1994)]. We reiterate that the purpose of this analysis is to give effect to our mandate that courts avoid a mechanical application of the law regarding termination of parental rights.

It is within this framework that a court determines whether a parent has faced barriers that prevented the parent from maintaining the parent-child relationship. What constitutes a "barrier" in the context of a Section 2511(a)(1) analysis is a finding within the discretion of the trial court, and what may constitute a barrier necessarily will vary with the circumstances of each case. In some instances, obstructive behavior by the child's custodian presented a barrier to the parent's ability to perform parental duties, which mitigates the parent's failure to maintain the parent-child relationship. *See*, *e.g.*, *Atencio*, 650 A.2d at 1067; [*In re*] *D.J.Y.*, 408 A.2d [1387,] 1389-1390 [(Pa. 1979)]. . . . In all instances, the trial court considered the explanation offered by the parent when deciding whether termination of parental rights was warranted.

- 10 -

*Id.* at 593.

Turning to Mother's first issue, she argues that the orphans' court abused its discretion when it terminated her parental rights pursuant to Section 2511(a)(1).  *See* Mother's Brief at 9-12.  Tellingly, Mother does not dispute that she has not had any contact with Child for four and one-half years.  *See id.*  Instead, Mother contends that Father obstructed her ability to perform her parental duties.  *See id.* at 11-12.

Specifically, Mother asserts that Father obtained the PFA orders to "thwart" her custodial time with Child.  *Id.* at 11.  Mother acknowledges that the PFA orders provided her with custody rights, but she contends that Paternal Grandmother and Paternal Aunt "refused" to act as the intermediaries for arranging custody for Mother.  *Id.*  Mother also acknowledges her ICC charges.  *See id.* at 12.  However, she baldly asserts that Father was "taking advantage" of her hearing impairment in an unspecified manner to have her charged with the ICC crime three separate times.  *See* N.T., 8/5/24, at 380.  Mother claims that this obstructed her ability to perform her parental duties because it made her afraid to contact Father to schedule custody of Child.  *See* Mother's Brief at 12.  We are not persuaded by Mother's arguments.

As previously mentioned, we note that Appellees filed the subject petition on August 4, 2021.  Mother received notice of the petition on October 4, 2021.  *See* Affidavit of Service, 10/4/21.  Therefore, the relevant six-month period is between February and August of 2021.  Regarding its finding that

- 11 -

termination pursuant to Section 2511(a)(1) was warranted, the orphans' court

reasoned, as follows:

> Mother did not perform any parental duties for Child during the six[-]month[] period of time [prior to the filing of the termination petition].
>
> . . .
>
> Mother had no interaction with Child beginning in February of 2021 and lasting until August of 2021. This span of time consists of a six-month period prior to Father filing to involuntarily terminate Mother's parental rights. Mother never called Child, sent clothes, sent cards, or sent letters. . . . As noted, the final PFA order explicitly permitted Mother to communicate with Father by email regarding child custody, yet Mother did not even send Father an email requesting contact with Child.
>
> . . .
>
> The court has considered whether Mother exercised reasonable firmness in overcoming any barriers to her involvement as a parent to Child.
>
> . . .
>
> Mother did not demonstrate reasonable firmness in attempting to overcome any obstacles (whether real or perceived) by Father and Stepmother to prevent her from seeing Child.

Orphans' Court Opinion, 7/7/25, at 11-14.

The orphans' court's findings are well-supported by the record evidence.

There is no dispute that Mother had no contact with Child for a year and one-

half prior to the filing of the termination petition in August 2021. It is also

undisputed that Mother had no communication or association with Child for a

total of four and one-half years, specifically from February 2020, through the

time of the subject termination hearing in August 2024. Indeed, Mother

admitted that she has not visited with or spoken to Child since February 2020.

*See* N.T., 8/5/24, at 404-05; N.T., 10/18/24, at 64-65, 69-70, 95-96. Mother confirmed that she never sent Child letters, never paid Father child support, and was completely uninvolved with Child's medical care and education from February 2020, through the filing of the petition in August 2021. *See* N.T., 10/18/24, at 96-97. There is no record evidence that Mother performed any of these tasks in the subsequent three years from August 2021, through the termination proceeding in August 2024.

Mother does not dispute that she failed to exercise the custodial time awarded to her under the PFA and custody orders. Mother claimed that she never reached out to Father for custodial time because she had no way to contact him. *See* N.T., 8/5/24, at 372-73, 376, 379; N.T. 10/18/24, at 66, 110, 112-13. This contention is belied by the record. Appellees testified that Mother did contact Father *via* text and social media to harass and threaten him, leading to the multiple ICC violations during the pendency of the temporary PFA order, which was in effect from February 2020, to September 2020. *See* N.T., 8/5/24, at 142-43, 145, 211, 263-65; *see also* GAL Exhibit 17. Mother admitted to texting Father during that time, which she claims was to exercise custody. *See* N.T., 8/5/24, at 372-73; Mother's Brief at 12. However, the temporary PFA order did not allow for any contact between Mother and Father, even to arrange custody. *See* GAL Exhibit 1 at 1-2 (unpaginated). There is no competent evidence that any of those

communications, while prohibited at the time, included requests to visit with or speak to Child.

The temporary PFA order only allowed for custodial arrangements to be made through Paternal Grandmother and Paternal Aunt. ***See id.*** However, Mother testified that she never reached out to Paternal Grandmother. ***See id.*** at 118. Mother stated that she only reached out to Paternal Aunt one time to ask for custodial time, which was in April 2020. ***See id.*** at 66, 117; N.T., 8/5/24, at 369. Mother testified that when Paternal Aunt refused to assist, she told Paternal Aunt that she would seek court intervention. ***See*** N.T., 8/5/24, at 369. The record contains no evidence that Mother pursued this route to exercise custody with Child.

Beginning in September 2020, Mother and Father agreed to communicate only through email regarding custody pursuant to the one-year final PFA order. ***See*** GAL Exhibit 22. This final PFA order was in effect during the relevant six-month period prior to the filing of the termination petition. Mother explained that she thought it was Father's responsibility to reach out to her because he had primary physical custody. ***See id.*** at 372; N.T., 10/18/24, at 93, 110-11. She testified that she simply waited for an email from Father that never came. ***See*** N.T., 8/5/24, at 372. Stepmother testified that Mother never reached out to Father for custodial time, even after the final PFA order expired. ***See id.*** at 130-32, 148.

Further, Mother acknowledged that she never appealed or filed for modifications of the custody and PFA orders. *See* N.T., 8/5/24, at 371, 377-378, 380-81; N.T., 10/18/24, at 92. It is undisputed that Mother never filed a petition seeking enforcement of her custody rights. *See* N.T., 8/5/24, at 165. She testified that this was for a variety of reasons: inability to afford a lawyer, difficulty navigating the court process *pro se*, problems due to COVID-19 protocols and restrictions, and unavailability to go to the courthouse due to her work schedule. *See id.* at 371, 377-378, 380-381, 419-422; N.T., 10/18/24, at 92.

Nevertheless, Mother managed to effectively initiate *pro se* two lawsuits against Father: the custody action and a civil action regarding their shared vehicles in August 2020. *See* N.T., 8/5/24, at 428; N.T., 10/18/24, at 137. Mother successfully represented herself in the civil action and obtained a monetary judgment against Father. *See* N.T., 8/5/24, at 256-257, 428; Mother's Exhibit 1. Mother stated that she could not represent herself in the custody action because it was "more important than the civil case." N.T., 8/5/24, at 428. However, she never obtained an attorney for the custody matter and consequently took no action with respect to her custodial award. *See id.* at 419-422.

Mother presented evidence of what she contends to be one attempt to reestablish contact with Child. *See id.* at 385. Specifically, Mother proffered an exhibit of a social media message she sent to Father on May 13, 2024.

*See id.*; Mother's Exhibit 3. The message asked Father if the two of them could "just co[-]parent[] for once." Mother's Exhibit 3. This singular message, sent approximately three years after the filing of the termination petition, again made no request to exercise her custodial time or have contact with Child.

Our case law clearly establishes that it is the obligation of the absent parent to preserve the parent-child relationship. *See L.A.K.*, 265 A.3d at 592-593. Here, it is clear that Mother did not act with the required fortitude to perform her parental duties to Child for a year and one-half preceding the subject petition. *See id.* Indeed, court orders that were entered as a result of her own actions, which awarded her custodial time she chose not to exercise, does not amount to obstructive behavior by Appellees. The court was well-within its discretion to consider Mother's explanations and ultimately determine that her excuses did not mitigate her failure to perform parental duties in excess of six months prior to the filing of the termination petition. *See id.* As such, we discern no abuse of discretion with respect to the orphans' court's finding that termination pursuant to Section 2511(a)(1) was warranted. Mother's first issue merits no relief.

If the orphans' court concludes that adequate grounds for termination exist pursuant to Section 2511(a), the court then turns to Section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A.

§ 2511(b); *see also T.S.M.*, 71 A.3d at 267. Our Supreme Court has directed that a Section 2511(b) inquiry must include consideration for the bond between the parent and the child. *In re E.M.*, 620 A.2d 481, 485 (Pa. 1993).

Our Supreme Court has further explained that "[i]t is only a necessary and beneficial bond, after all, that should be maintained." *Interest of K.T.*, 296 A.3d 1085, 1109 (Pa. 2023). The *K.T.* Court described the "severance of a necessary and beneficial relationship [as] the kind of loss that would predictably cause 'extreme emotional consequences' or significant, irreparable harm." *Id.* at 1109-1110 (citations omitted).

Our Supreme Court has recognized that "case law indicates that bond, plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109. We will not disturb a court's Section 2511(b) assessment if the court's findings are supported by the record. *M.E.*, 283 A.3d at 839.

Mother's final issue contends that the trial court abused its discretion by finding that Appellees met their evidentiary burden with respect to Section 2511(b). *See* Mother's Brief at 13. The extent of Mother's argument for this issue is, as follows:

> Child testified that she wanted to be adopted and live with Father. However, it makes no legal sense to terminate parental rights when Child has been kept away from Mother, weakening the connection between Mother and Child.

*Id.* at 13. We disagree.

The orphans' court appropriately focused on Child's developmental, physical, and emotional needs and welfare in its conclusion regarding Section 2511(b). In doing so, the court found:

> There is no bond between [] Child and Mother; thus, no harm will befall [] Child if Mother's rights are terminated. In contrast, there is a strong, positive bond between [] Child and Stepmother, who, along with Father, is meeting [] Child's developmental, physical, and emotional needs and welfare.

Orphans' Court Opinion, 7/7/25, at 15.

The record undoubtedly supports the orphans' court's findings. Importantly, Mother does not dispute that there is no bond between her and Child. *See* Mother's Brief at 13. Rather, without any citation to legal authority or record evidence, she again attempts to blame Appellees for the lack of a parental bond between her and Child. *See id.* In essence, Mother baldly argues that it would be unjust to her to find the evidentiary burden of this subsection met due to her unsupported claim that Appellees obstructed her access to Child. *See id.* However, Section 2511(b) and the related case law are clear that the focus of this subsection is on the needs and welfare of Child, not Mother. *See* 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267.

The above discussed evidence with respect to Section 2511(a)(1) demonstrates that Child shares no bond with Mother, due to Mother's failure to perform her parental duties. We reiterate that it is undisputed that Mother did not have contact with Child or exercise her awarded custodial time since

February 2020. Indeed, the absence of a bond between Child and Mother is a natural consequence of four and one-half years of no contact at the time of the termination hearing.

Ten-year-old Child testified that she does not have contact with Mother. *See* N.T., 8/5/24, at 67. She stated that she has not spoken to Mother since she was about five years old. *See id.* at 67-68. Child testified that the last time she saw Mother was at a previous court proceeding, which we discern was the prior termination hearing from 2022 and 2023. *See id.* at 80. Child stated that she did not recognize Mother and could only identify her because people were using ASL around her. *See id.* at 80. Child testified that she did not want contact with Mother and affirmed that she wanted Mother's parental rights to be terminated. *See id.* at 68, 71, 82.

In contrast, Child refers to Stepmother as "my mom" and testified that she feels supported by Stepmother. *Id.* at 61, 72. When asked what she thinks of when she thinks of Stepmother, Child replied "happiness." *Id.* at 81. Child stated that she wanted Stepmother to adopt her and confirmed that she wanted Stepmother to be her "legal mother." *Id.* at 78-79, 81-82.

Appellees corroborated Child's testimony. Father stated that Child has "no interest" in contact with Mother. *Id.* at 233. Stepmother testified that Child "stated that she wished she was an adult so [Mother] wouldn't recognize her." *Id.* at 170. Stepmother stated Child asked if Stepmother could be her mother in the summer of 2021. *See id.* at 98. Stepmother confirmed that

Child calls her "mommy." *Id.* at 161. Stepmother described her relationship with Child as an "open door type relationship" where she is consistently present and available for Child. *Id.* at 158-59. It is undisputed that Appellees have been providing for all of Child's developmental, physical, and emotional needs in the four and one-half years that Mother has been completely absent from Child's life.

Based upon the foregoing, this record amply supports the orphans' court's conclusions that Child shares no parental bond with Mother, and that Child's developmental, physical, and emotional needs and welfare were best served by termination of Mother's parental rights. Therefore, we discern no abuse of discretion in the orphans' court's conclusion that Appellees met their evidentiary burden pursuant to Section 2511(b).

Thus, we affirm the decree involuntarily terminating Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).

Decree affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/5/2025